**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles HOPPER, Defendant–Appellant.**

**No. 90–6230.**

United States Court of Appeals,
Sixth Circuit.

Argued March 12, 1991.

Decided Aug. 2, 1991.

Darrell A. Stewart, Asst. U.S. Atty. (argued), Nashville, Tenn., for plaintiff-appellee.

Gary D. Copas (argued), Lebanon, Tenn., for defendant-appellant.

Before KRUPANSKY and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.

BOGGS, Circuit Judge.

The defendant in this case, Charles Hopper, pled guilty to engaging in the sale of firearms without registering and paying the special tax. He was sentenced to ten months of imprisonment and a fine. He now challenges his sentence, both the length of his confinement and the fine. We affirm the length of the confinement but remand on the fine because the trial judge failed adequately to address the considerations required by statute.

I

This case resulted from an investigation by the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). Hopper owned a store called "Charlie's Market." In order to supplement his income, he leased some space in the building to George Venters (a co-defendant who is not a party to this appeal) for the purpose of selling guns.

Donald Watson, an ATF agent, entered the store in September 1989 to inquire about purchasing a gun. He asked Hopper, who was alone in the store, to show him some guns. Watson asked Hopper about purchasing a "Tec 9" semi-automatic weapon. Hopper said that he could take Watson to the back of the store and show him "what guns *we've* got here on the property" (emphasis added). Hopper then showed Watson around the room from which guns were sold and discussed with him prices and the nature of the inventory. When Watson asked to see a particular gun, Hopper called someone on the phone. Venters came and showed Watson the gun. Subsequent contacts between Watson and Venters resulted in the sale of two guns to ATF. Venters sold Watson a Tec–9 pistol

and an AR–7 rifle (with a silencer); both guns had, at Watson's request, been converted to fully automatic weapons. A search of the store revealed silencers as well as parts used to convert semi-automatic guns to fully-automatic guns.

Hopper was charged with unlawfully engaging in a business as a dealer in firearms, in violation of 26 U.S.C. § 5861(a). This section provides that it is unlawful to engage in the selling of certain specified firearms without paying the required tax or registering with the appropriate authorities. 26 U.S.C. § 5845 defines the firearms that are within the purview of these provisions. 26 U.S.C. § 5801 sets out the applicable tax that must be paid, and the registration requirements are set out in 26 U.S.C. § 5802.

At the sentencing hearing, the trial judge stated that he was sentencing Hopper to ten months in prison plus a $2,000 fine, and an amount equal to the cost of incarceration, $1,416 per month for each month of incarceration and $48.33 for each month of supervised release. There is some discrepancy between this statement and the actual order filed by the court. In the order, the court sentenced Hopper to ten months in prison, and a payment of $1,416 for each month of imprisonment and $48.33 for each month of supervised release. However, the court did not include the $2,000 fine in its order.

## II

Hopper's conduct violated two different statutes, 26 U.S.C. § 5861(a) and 18 U.S.C. § 922(a)(1). Hopper was charged under and pled guilty to the more serious violation, 26 U.S.C. § 5861(a). Hopper insists at every opportunity that the conduct proscribed by 26 U.S.C. § 5861(a) is "identical" to the conduct proscribed by 18 U.S.C. § 922(a)(1). This argument is frivolous. The provision under which Hopper was not charged, 18 U.S.C. § 922(a)(1) is a general provision making it illegal for anyone not a licensed dealer to sell firearms. That provision applies to a person who sells any firearm as defined by 18 U.S.C. § 921(a)(3). Section 921(a)(3) defines a firearm as "any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive," with the exception of antique firearms. 26 U.S.C. § 5861(a), the provision that Hopper pled guilty to violating, is narrower. Section 5861(a) makes it illegal for anyone to sell certain "firearms," as defined in 26 U.S.C. § 5845, without registering or paying the special tax. Section 5845 firearms include particularly dangerous weapons such as short-barrelled shotguns, machine-guns, and silencers.

■ The Guidelines treat violations of 18 U.S.C. § 922(a)(1) differently from violations of 26 U.S.C. § 5861(a). Under U.S.S.G. § 2K2.3, as in effect at the time of Hopper's sentencing,[1] the base offense level for a violation of § 5861(a) was 12, while the base offense level for a violation of § 922(a)(1) was 6. Hopper contends that this differential treatment contradicts the commands of 28 U.S.C. § 991(b)(1)(B), which provides that one purpose of creating the United States Sentencing Commission was to "avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct...." His argument is that the two substantive sections are identical and that the sentences for violating each should therefore be identical.

Inexplicably, the government does not invoke *Chevron, U.S.A., Inc., v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), or its progeny, in defense of the provision. Although we have not directly addressed the question of whether decisions of the Sentencing Commission should be given the deference required by *Chevron,* other courts have applied *Chevron* in reviewing claims that the Sentencing Commission contradicted its enabling statute. *See, e.g., United States v. Doe,* 934 F.2d 353, 359 (D.C.Cir.1991); *United States v. Harper,* 932 F.2d 1073, 1075 (5th Cir.1991); *United*

---

**1.** Subsequent to Hopper's conviction, the Guideline provision has been amended. The amendment increases the applicable offense level by six points.

*States v. Martinez–Cortez,* 924 F.2d 921, 923 (9th Cir.1991); *United States v. Lewis,* 896 F.2d 246, 247 (7th Cir.1990). Nonetheless, we need not address the issue of whether *Chevron* applies to the Guidelines as Hopper's disparity argument is wholly meritless under any standard of review, deferential or not.

Guideline § 2K2.3 punishes those who illegally sell machine guns and other dangerous weapons (such as hand grenades and sawed-off shotguns) more severely than those who violate the more general provision that applies to all firearms. It cannot be denied that 28 U.S.C. § 991(b)(1)(B) provides that one purpose of creating the sentencing commission was to avoid *"unwarranted* disparity" in sentencing (emphasis added). Implicit in the notion that unwarranted disparities are to be eliminated is the principle that, where warranted, disparities are perfectly acceptable, and, indeed, desirable. The distinction drawn in this case seems to us to be eminently sensible. The weapons listed in 26 U.S.C. § 5845 are particularly dangerous. It is quite in accord with the guidelines to punish one who sells a machine-gun or sawed-off shotgun illegally more severely than one who sells, for example, an ordinary hunting rifle illegally.

▆▆▆ Hopper also makes an equal protection argument based on the same premise—that the two statutory provisions proscribe identical conduct. This argument suffers from many flaws, which we need not go into, since the argument depends on the same false premise, that the two statutes proscribe identical conduct, as his attack on the guideline sentence. The two statutes apply to similar, but not identical conduct. Nor can Hopper appeal the failure to depart downward, as he attempts to do. *See United States v. Draper,* 888 F.2d 1100, 1105 (6th Cir.1989).

▆▆▆ Hopper also maintains that a sentence of ten months of imprisonment for selling a machine gun violates the eighth amendment's guarantee against cruel and unusual punishment. In light of the Supreme Court's recent decision in *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680,

115 L.Ed.2d 836 (1991), this argument cannot be taken seriously. In *Harmelin,* the Court upheld Michigan's mandatory life sentence without the possibility of parole for possession of more than 650 grams of cocaine. The Court was divided into three groups. Justice Scalia, joined by Chief Justice Rehnquist, found, after an exhaustive and thorough historical analysis, that the eighth amendment does not contain a proportionality requirement. *Id.* 111 S.Ct. at 2685–2694 (Scalia, J., concurring). Four Justices—White, Marshall, Blackmun, and Stevens—believed that the eighth amendment includes a strong proportionality requirement, and they would have struck down the required sentence. Justice Kennedy's concurrence, which was joined by Justices O'Connor, and Souter, was dispositive. He concluded that the principle of *stare decisis* required the application of a "narrow proportionality principle." *Id.* 111 S.Ct. at 2695 (Kennedy, J., concurring). Thus, although only two Justices would have held that the eighth amendment has no proportionality requirement, five Justices agree that there is no requirement of strict proportionality. Applying its "narrow proportionality principle," the plurality found that Michigan's mandatory life sentence for possession of cocaine did not run afoul of eighth amendment.

▆▆▆ Hopper's ten-month jail term easily survives the "narrow proportionality principle" applied by the *Harmelin* plurality, the opinion that is, we believe, binding upon us. Under this approach, there is no requirement of strict proportionality; the eighth amendment is offended only by an extreme disparity between crime and sentence. *See id.* 111 S.Ct. at 2696. We see no such disparity in this case. Furthermore, Justice Kennedy analyzed the seriousness of the offense generically in terms of the threat to society posed by the type of conduct at issue in that case rather than the specific threat caused by Mr. Harmelin himself. The unauthorized distribution or use of dangerous weapons constitutes a sufficiently grave threat to society that a sentence of ten months is more than justified.

## III

Hopper also challenges the amount of his fine. The sentence—as recorded on the court's actual judgment—was $1,416 for each month of incarceration plus $48.33 for each month of supervised release. In the Pre–Sentence Report ("PSR"), the probation department concluded that Hopper had the financial wherewithal to pay a *total* fine of $1,740. Although Hopper has a net worth of slightly over $36,000, most of that is attributable to the equity in the home that he shares with his wife. The district court is, of course, free to reach a different conclusion than the PSR. In this case, however, the court did not, so far as we can tell, consider the factors, such as the defendant's income, his ability to pay, and the effect that the fine might have on dependents, that are required by 18 U.S.C. § 3572 and U.S.S.G. § 5E1.2(d)(3) in determining the amount of the fine. In particular, the court failed to consider the effect that the fine might have on the defendant's dependent wife. Nor did the court consider allowing Hopper to pay his fine in installments, as contemplated by U.S.S.G. §§ 5E1.2(d) & (f). Accordingly, we remand for additional consideration on that issue.

## IV

Hopper's term of imprisonment is AFFIRMED. The amount of the fine is VACATED and REMANDED for reconsideration in light of the applicable statutory factors.