985 F.2d 562
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William ZACK and William Vicary, Defendants-Appellants.
 Nos. 91-2150, 92-1008.
 United States Court of Appeals, Sixth Circuit.
 Jan. 19, 1993.
 
 Before BOGGS and DAVID A. NELSON, Circuit Judges, and ROSENN, Senior Circuit Judge.[1]
 PER CURIAM.
 
 
 1
 Defendants William Zack (91-2150) and William Vicary (92-1008) appeal their convictions and sentences arising out of a scheme to defraud the United States. Zack argues that the court improperly refused to admit evidence and to give his requested jury instructions, and that he should not have been sentenced under the guidelines. Vicary argues that the court erroneously refused to admit evidence, that his trial should have been severed from that of Zack, and that the court failed to consider his ability to pay before imposing a fine. For the reasons stated, we affirm.
 
 
 2
 * William Zack and Lester Sova owned the Zacova Tool and Die Company. According to Sova, the government's primary witness, Zack devised and carried out a scheme beginning in 1981 to siphon money tax-free from their business. Between 1981 and 1987, Zack enlisted the help of defendants William Vicary, James Hawreluk, and Kenneth Bourlier. These men created and presented false invoices to the Zacova company. The Zacova group would then issue checks for work that these parties never performed. The checks were converted to cash, and then approximately 75 to 90% of the money was returned to Zack and Sova personally. The remaining 10 to 25% was payment to the outside party. Through this scheme, Zack and Sova reduced the tax liability of their company, and obtained tax-free cash for their personal use. Sova testified that Zack first enlisted Vicary, who issued numerous false invoices under the name "Black Jack Industries."
 
 
 3
 The scheme stalled in December 1983 because Vicary went to jail on unrelated federal drug charges. However, not to be deterred, Vicary, while in prison, had meetings with Hawreluk and Bourlier.[2] Vicary explained the scheme to these parties, and asked them to proceed in his absence. The operation thus continued. Another man, Sam Raich, also began to handle some of the deals. However, in October 1986, the IRS began to investigate Raich and his associates. Soon after, the tax scheme ceased operations, and the government eventually apprehended the defendants. Government witnesses estimated that Zack and Sova obtained over one million dollars through this operation.
 
 
 4
 While this tax scheme was operating, starting in 1982, the Zacova group paid kickbacks totalling over $190,000 to employees at Ford Motor Company and General Motors, in order to receive contracts with the automakers.[3] However, in December 1984, Zack and Sova reported the kickbacks to the companies, and the kickbacks ceased. According to Sova, Zacova obtained some of the money they used to make the kickbacks from the tax scheme. However, the tax scheme started before and continued after the kickback scheme was in operation.
 
 
 5
 The trial began in April 1991. Most of the other parties to the tax scheme testified for the government. The jury found both Zack and Vicary guilty. Both defendants were convicted of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. Zack also was convicted of two counts of tax evasion and seven counts of filing false tax returns, in violation of 26 U.S.C. § 7201 et seq. Pursuant to the sentencing guidelines, Zack received a sentence of 70 months in prison. Vicary received 30 months in prison and a $35,000 fine. Vicary and Zack appeal their convictions and sentences.
 
 II. ZACK
 
 6
 * Zack attempted to present a number of checks to the jury that showed approximately $700,000 paid from Mr. and Mrs. Zack to the Zacova Company. The defense's theory was that the bogus tax scheme was meant to create large amounts of cash in order to make kickbacks to Ford and General Motors. When the kickbacks became unnecessary, Zack returned the money to the company. According to the defense, the $700,000 represents this repayment, and shows that no income tax evasion occurred and that Zack did not receive any personal income from the tax scheme. The district court refused to allow the checks into evidence.
 
 
 7
 Determinations of admissibility and relevance depend upon the exercise of sound discretion within the context of the entire trial. United States v. Walton, 909 F.2d 915 (6th Cir.1990); United States v. Stull, 743 F.2d 439 (6th Cir.1984), cert. denied, 470 U.S. 1062, 105 S.Ct. 1779 (1985). This court generally will not tamper with a trial court's evidentiary rulings. In the present case, the district court acted within its discretion. The defendant failed to offer any foundation for the admittance of the checks. There was no evidence that the checks were for the purpose of repaying funds taken from the company through the invoice scheme. Moreover, the bogus tax scheme started before and ended after the kickbacks. Therefore it is implausible that the only purpose of the funds was to support the kickbacks. It is simply irrelevant that some of the money acquired through the tax scheme was used for kickbacks.
 
 B
 
 8
 Zack next argues that the court improperly denied him the opportunity to present his theory to the jury that he was merely a conduit between Zacova and the Ford and General Motors employees. Extortion payments held by a conduit before payment are not income to the intermediary. Sol Diamond v. Commissioner, 56 T.C. 530 (1971). The reason is that the intermediary has no "claim of right" to the money. Zack requested an instruction that, if he was holding the money for extortion payments, he must be found not guilty. Specifically, defendant requested the following three instructions: 1) "Income subject to tax does not include monies held as an intermediary to be paid over to a recipient such as extortion payments made by a company to an individual;" 2) "Gross income does not include monies held as an intermediary to be paid over to a recipient as extortion payments made by a company to an individual;" and 3) "If you find that defendant Zack was holding money for entities in which he had an interest in order to pay the extortion payments and those that might be required in the future and that he did not believe these monies to be income to him in good faith even though mistaken, then you must enter verdicts of not guilty." The trial judge refused to give these instructions.
 
 
 9
 A denial of requested instructions is error only if 1) the instructions are a correct statement of the law; 2) the instructions are not substantially covered by other delivered charges; and 3) the failure to give the instruction impairs the defendant's theory of the case. United States v. Williams, 952 F.2d 1504 (6th Cir.1991). In the present case, the instruction was not a correct statement of the law. The "claim of right" doctrine is inapplicable. This theory applies when the intermediary is a "mere conduit" for the payment of money. Lashell's Estate v. Commissioner, 208 F.2d 430 (6th Cir.1953). Under the "claim of right" doctrine, a taxpayer cannot hold funds, and then later make illicit payments with them at his discretion. He must exercise no control over the direction of the funds. Therefore, the requested instructions constitute an incorrect statement of the law. Moreover, the denial of the instruction did not impair Zack's theory of the case because, as discussed, this theory is implausible. Zack started the tax scheme and continued it after the kickbacks ceased. For these reasons, the district court properly disallowed these instructions.
 
 C
 
 10
 Prior to trial, defense counsel for Zack brought a motion to prevent all references to drugs during the trial. The court granted the motion. Zack had no past drug involvement himself, but he realized that many of his associates did, and he feared that he would be tarnished.
 
 
 11
 James Hawreluk replaced Vicary in the scheme. He testified for the government. During the government's examination of him, counsel for defendant Vicary, outside the presence of the jury, expressed his desire to cross-examine Hawreluk regarding his past drug use. At that time, the court asked if any of the defendants had any objections. Counsel for Zack stated "I have no objections." The government then stated that, if Vicary was going to question about drug use, it would need to do the same during direct examination. None of the parties objected. During direct examination, the prosecutor elicited that Hawreluk previously had used cocaine, but that he stopped shortly after his involvement in these events. Later, during cross-examination by Zack's counsel, the following exchange occurred:
 
 
 12
 Q. You don't in any way intend to insinuate to this jury that Mr. Zack had anything to do with your coke problem, do you?
 
 
 13
 A. No, he didn't.
 
 
 14
 Defendant now argues that the court's failure to exclude all references to drugs requires a mistrial. This position is incorrect. Defendant explicitly approved of the questioning, thereby waiving the opportunity to object.
 
 D
 
 15
 Most of the alleged illegal acts occurred prior to the implementation of the sentencing guidelines on November 1, 1987. However, Zack filed an income tax return on November 13, 1987. Based upon this return, the court held that the guidelines applied. Defendant contests this ruling.
 
 
 16
 This Circuit has stated that where a defendant participates in an ongoing offense, which continues after the guidelines take effect, the guidelines apply. United States v. Barger, 931 F.2d 359 (6th Cir.1991); United States v. Edgecomb, 910 F.2d 1309 (6th Cir.1990); United States v. Walton, 908 F.2d 1289 (6th Cir.), cert. denied, 111 S.Ct. 273 (1990). According to Walton, the guidelines apply if the conspiracy straddles the date of the guidelines, even if the specific defendant committed no further acts after the effective date. Id. at 1293. Therefore, the district court correctly applied the guidelines.
 
 III. VICARY
 
 17
 * Defendant Vicary moved to sever on the grounds that Zack and Raich would be willing to testify, at a separate trial, that Vicary did not participate in the tax scheme. Neither of these defendants planned to testify at the joint trial. Thus, the only way that Vicary could obtain their testimony was through a severance. The court denied the motion.
 
 
 18
 Fed.R.Crim.P. 14 permits severance if required to avoid prejudice. Vicary argues that the denial of a severance prejudiced his defense. This position is incorrect. First, Vicary failed to bring the motion timely. On the morning of the first day of trial, Vicary moved for severance without citing any authority. Defendant also failed to present any affidavits from Zack or Raich concerning their anticipated testimony. Under Fed.R.Crim.P. 12(b), a request for a severance must occur prior to trial. Furthermore, under Rule 14, a court may set a cutoff date for making pretrial motions. In this case, the court set a cutoff date of March 29, 1991. Defendant brought this motion on April 23, 1991. Accordingly, the court properly denied the motion as untimely.
 
 
 19
 Defendant Vicary also requested a severance because he feared a spill-over effect. Vicary claims that his only involvement in the scheme occurred in 1982 and 1983. After that, he was in prison for drug offenses until the conspiracy ended. Vicary claims that most of the evidence concerned unlawful acts occurring in 1984 and 1985. Because he did not participate in these activities, he claims that severance was proper to avoid prejudice to his case.
 
 
 20
 This position is incorrect. There was no motion to sever prior to trial. Accordingly, Vicary waived this argument. Moreover, the "general rule is that parties who are jointly indicted should be tried together." United States v. Frost, 914 F.2d 756, 764 (6th Cir.1990). "To be excepted from the rule, a defendant must carry the heavy burden of showing specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials." Ibid. "A jury is presumed capable of sorting out evidence and considering each count and each defendant separately." United States v. Gallo, 763 F.2d 1504, 1525 (6th Cir.1985), cert. denied, 475 U.S. 1017, 106 S.Ct. 1200 (1986). In this case, Vicary played a major role not only in 1982 and 1983, but after he went to jail. Vicary had meetings with Hawreluk and Bourlier while in prison. He explained the scheme to these two parties, and asked them to proceed in his absence. Vicary's actions affected the conspiracy long after he went to jail. Accordingly, severance was not necessary.
 
 B
 
 21
 In 1983, defendant Vicary pled guilty to a drug offense, violating 18 U.S.C. § 4205(b)(2), and received a 15-year prison sentence. Pursuant to his plea agreement, Vicary cooperated with federal authorities. During Vicary's cross-examination, the government questioned him on the drug conviction. The government attacked his credibility by revealing to the jury that Vicary was a convicted felon. On redirect examination, Vicary's counsel attempted to rehabilitate him by showing that defendant cooperated with the government by providing evidence against various drug organizations. The court disallowed this testimony. Vicary now claims on appeal that the court erred when it did not allow him to testify about the terms of his 1983 plea agreement. Defendant argues that his cooperation bears directly on his character.
 
 
 22
 Defendant is incorrect. The mere fact that the government relied on Vicary in a previous trial does not mean that Vicary was testifying truthfully in the present case. This is especially true because Vicary had a self-interest to testify at the earlier trial. He received a reduction in sentence. His earlier testimony does not say anything about Vicary's veracity. Accordingly, it was within the district court's discretion to exclude this evidence.
 
 C
 
 23
 Zack received a thirty-month sentence and a $35,000 fine. Under 18 U.S.C. § 3572, the sentencing court must consider the defendant's ability to pay before assessing the fine. United States v. Hopper, 941 F.2d 419 (6th Cir.1991). In the present case, the district court satisfied this requirement. The court gave the minimum fine allowable under the statute. Moreover, the court specifically allowed the defendant to pay the fine on an installment basis, after he was released from prison. Id. at 423 (fact that the court did not consider allowing defendant to pay on an installment basis is evidence that the court improperly failed to consider ability to pay). The mere fact that the judge did not make specific factual findings on the record is irrelevant. United States v. Purther, 823 F.2d 965, 969-70 (6th Cir.1987) (trial court need not make explicit findings with respect to a defendant's financial condition when imposing fine). Accordingly, the court's decision was proper.
 
 
 24
 For the foregoing reasons, we AFFIRM the convictions and sentences of Zack and Vicary.
 
 
 
 [1]
 The Honorable Max Rosenn, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [2]
 Both Hawreluk and Bourlier testified for the government
 
 
 [3]
 Approximately $180,000 went to Ford, with only $10,000 to General Motors