**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**File Name: 14a0032n.06**

**No. 12-5541**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Jan 15, 2014 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PAUL D. MANN, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  COOK, WHITE, and DONALD, Circuit Judges.

**BERNICE B. DONALD, Circuit Judge.**  Paul D. Mann pleaded guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) after he was caught with a .22 caliber rifle while hunting on his property.  The district court determined that three of Mann's previous convictions for violent felonies occurred on separate occasions, qualifying him as an armed career criminal under § 4B1.4(a) of the Sentencing Guidelines, and sentenced him to 180 months' imprisonment, the statutory mandatory minimum under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).[1]  Mann timely appeals, arguing that the district court's characterization of his

---

[1]18 U.S.C. § 924(e) provides:

In the case of a person who violates section 922(g) of this title [felon in possession] and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, *committed on occasions different from one another*, such

-1-

past convictions as ACCA-qualifying offenses was improper because they are too old, that he is not

an armed career criminal because two of his prior convictions were part of a single criminal episode,

and that his sentence violates the Eighth Amendment. Mann also has filed a motion to strike his

original brief, submitted by counsel, and a motion to file a pro se supplemental brief in which he

raises claims of ineffective ineffective assistance of counsel, insufficiency of the evidence, and lack

of probable cause to arrest. For the reasons stated herein, we DENY the former motion as moot,

GRANT the latter, and REVERSE and REMAND this case for re-sentencing.

I.

Mann's 1993 offenses occurred outside a bar, where, according to his presentence report,

he cut a patron on the forehead with a four-inch knife. [(R. 30, PSR at 7 ¶ 27, ID 92.)] Police

arrested Mann at the scene, and, after they put him in the backseat of a police cruiser, Mann began

kicking the cruiser door. When the police attempted to remove Mann from the cruiser, he kicked

one of the deputies in the shoulder, requiring the officers to place him in leg restraints. [(*Id.* at 8

¶ 27, ID 93.)] Mann pleaded guilty of aggravated battery for the knife attack and battery on a law

enforcement officer for kicking the deputy. [(*Id.* at 7 ¶ 27, ID 92.)]

---

person shall be . . . imprisoned not less than fifteen years. . . .

(Emphasis added).

II.

Mann first argues that his "stale" and "ancient" prior offenses are too old to serve as ACCA-qualifying felonies. Mann's prior offenses, committed in 1988 and 1993, are indeed stale. However, "the ACCA does not limit the age of convictions that can trigger enhancements." *United States v. King*, 516 F.3d 425, 432 (6th Cir. 2008). Accordingly, the district court did not err in considering Mann's 1988 convictions of gross sexual imposition and aggravated assault and 1994 convictions of aggravated battery and battery of a law enforcement officer as ACCA-qualifying offenses.

III.

Mann next contests the district court's determination that his two 1994 convictions were committed "on occasions different from one another" within the meaning of the ACCA. We review the decision to sentence a defendant as an armed career criminal de novo, *United States v. Vanhook*, 640 F.3d 706, 709 (6th Cir. 2011), including the determination that the defendant committed prior ACCA-qualifying felonies on different occasions, *United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012). Whether a defendant has three prior violent felonies under the ACCA depends not on the number of prior convictions, but the number of "criminal episodes" committed on different occasions. *United States v. Thomas*, 211 F.3d 316, 319 (6th Cir. 2000).

This court has struggled with the task of determining when multiple prior offenses were part of the same criminal episode. In *United States v. Brady*, 988 F.2d 664, 670 (6th Cir. 1993) (en banc), an en banc panel determined that two robberies committed the same evening against different

victims in separate locations constituted separate criminal episodes committed on different

occasions.  Thirteen years later, after reviewing various cases addressing the question whether two

prior convictions constituted a single criminal episode or multiple criminal episodes under the

ACCA, this court distilled those cases and identified three relevant factors:

> The foregoing review of our previous decisions in which we have addressed the question of whether two offenses committed in temporal and physical proximity constitute two offenses under the ACCA, as opposed to being a single criminal episode, suggest that there are at least three indicia that offenses are separate from each other.
>
> First, two offenses are "committed on occasions different from one another" under the ACCA, if it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins. Thus, in *Brady*, the defendant's initial armed robbery at the Mack Avenue Beauty Shop had concluded, and he had left that commercial establishment before he entered the Club Continental Bar to commit the second armed robbery. Similarly, in *Carnes*, we held that the defendant's two previous convictions for burglary constituted two predicate offenses under the ACCA, because he had completed the burglary of the first residence before he entered the second residence to burglarize it.  In contrast, in *Graves*, *Murphy* and *Thomas*, we concluded that the first offense had not been completed or come to an endpoint before the second offense had begun. . . .
>
> Second, two offenses are committed for ACCA purposes if it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense.  Thus, in *Brady*, we noted that the defendant could have decided while sitting in the Club Continental Bar that one robbery "was enough for the evening," and departed without robbing that establishment. 988 F.2d at 669.  Likewise, in *Wilson*, we noted that the defendant could have "halted his criminal rampage at any time," but instead chose to select additional victims on different floors of the house. 27 F.3d at 1131.
>
> Finally, separate offenses are committed if the offenses are committed in different residences or business locations. Thus, in *Brady*, the defendant's two armed robberies constituted two predicate offenses under the ACCA, because the armed robbery at the Mack Avenue Beauty Shop had ended when he left that business establishment and went to the Club Continental Bar, where he committed the second predicate offense. In *Carnes*, the first violent felony ended when the defendant left the first residence in order to go to the second residence to commit the second

> burglary. In *Murphy*, however, we held that the two violent felonies for which *Murphy* had previously been convicted were not committed on different occasions, because he had remained in the residence where the initial robbery had occurred, while his accomplices went to the adjoining residence to commit another robbery and that, therefore, the first offense had not been completed before the second occurred. Similarly, in *Graves*, we concluded that the defendant's previous convictions for burglary and assault constituted one predicate offense under the ACCA, because he had not left the location at which he had committed the burglary, when he committed the assault.

*United States v. Hill*, 440 F.3d 292, 297–98 (6th Cir. 2006).

Thus developed the rule that a defendant commits offenses on different occasions under the ACCA if:

> (1) it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins; (2) it would have been possible for the offender to cease his criminal conduct after the first offense . . . ; or (3) the offenses are committed in different residences or business locations.

*Jones*, 673 F.3d at 503 (internal quotation marks omitted).

The district court correctly identified the three-factor test outlined in *Jones*, 673 F.3d at 503, as stating the applicable law. However, we cannot apply the test's seemingly broad language in isolation. Taken at face value, the *Jones* factors could be used to hold that almost *any* two offenses constitute multiple criminal episodes; but the cases on which the factors are based have limited their meaning.

Congress passed the ACCA specifically to target recidivism and to punish those who committed crimes on occasions different from one another in separate "criminal episodes." *United States v. Murphy*, 107 F.3d 1199, 1208–09 (6th Cir. 1997). We have defined a "criminal episode"

as "a punctuated occurrence with a limited duration." *Brady*, 988 F.3d at 668 (quoting *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir. 1991)). However, whether any scenario qualifies as a distinct criminal episode is a highly fact-based question. The best one can do is identify the considerations that were most salient in each particular case. That is what this court did in *Hill, supra*, after reviewing the decided cases; it merely identified "three indicia that offenses are separate from each other." *Id*. For example, we have held that two burglaries committed at two separate locations and interrupted by a period when the defendant sat in a bar were two criminal episodes, *id*. at 669; we also have held that two rapes of two women in different locations were part of "single, ongoing criminal episode," *United States v. Thomas*, 211 F.3d 316, 321 (6th Cir. 2000). And, in *Graves*, we held that a burglary of a home, followed by escape into woods near the home and an assault on the pursuing police officer by pointing a gun at him, constituted a single criminal episode.

While the *Jones* factors represent a convenient attempt to generalize our law, the cases themselves do not fit neatly into the factors so as to render them a test that requires no further analysis of the facts. One can imagine any number of scenarios where it would be possible to discern start and end points between two offenses or where it would be possible to argue that the defendant could have ceased his conduct before committing the second offense, thus satisfying a facial view of the *Jones* factors, but where the offenses were part of a single criminal episode. That *Mann* committed two offenses separated by a distinct demarcation in time, could have refrained from committing the second offense, and committed it at a separate location cannot in itself be enough because otherwise we would have reached different outcomes in *Thomas* and *Graves*.

In *Thomas,* Thomas and Bucky abducted two women in a car; Thomas raped the passenger in the car, while Bucky the driver out of the car and raped her; they then forced the driver to go to another location where Thomas raped the passenger again; Thomas and Bucky switched victims and each raped the other woman, and then Thomas raped the first woman again. Thomas was charged with and convicted of raping both women. The district court treated the two convictions as two separate crimes for purposes of the ACAA:

> What we have here is, in the language of *Brady* [*United States v. Brady*, 988 F.2d 664 (6th Cir. 1993) (en banc) ], an incident that is part of a series but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration. Here we have the rape of the first victim, which forms one episode. We then have an opportunity for Mr. Thomas to have ceased and desisted from further criminal conduct. Instead he made a decision at that point to commit a separate act of aggression against a second victim, and he raped the victim of the second rape that occurred in point in time.FN4
>
> > FN4. The trial court found it somewhat significant, although possibly not determinative, that the vehicle was stopped and moved to a different location. The court mentioned this fact in order to clarify that this was not a case where the two victims and the two men were riding around in the car the entire time that these incidents occurred.

*Thomas*, 211 F.3d at 319.

Clearly, it is possible to determine when each rape began and ended; Thomas could have stopped each rape at any time and refrained from committing another; and at least some of the rapes were committed at separate places. Yet, this court reversed after surveying the same cases that led to the rule annunciated in *Hill* and *Jones*:

> Our reasoning in these cases is guided by the purpose of the ACCA, which is to target recidivism . . . . "Because Congress intended to punish recidivists, the

predicate conduct must amount to separate and distinct transactions in some definable sense." *Murphy*, 107 F.3d at 1210. There must be some "reasoned basis" for considering criminal conduct to be a definable event. *Id*. As we cautioned in *Graves*, "[i]t should not be necessary to reach to apply this statute; instead, the statute should be applied where the facts demand its application." 60 F.3d at 1187.

Considering whether the first crime was concluded provides a reasoned basis for determining whether the conduct constitutes more than one episode such that it can be considered a "repetition of criminal conduct." If the first crime is concluded we can safely infer that the defendant entered into the second crime with a fresh purpose. As noted in *United States v. Pope*, 132 F.3d 684, 692 (11th Cir.1998), the courts of appeals are "virtually unanimous" in stating that "the 'successful' completion of one crime plus a subsequent conscious decision to commit another crime makes that second crime distinct from the first for the purposes of the ACCA." *Id*.

In the case before us today, it is the absence of a completion or definable endpoint of the first crime before the second crime was begun that distinguishes this case from *Brady* and *Wilson*, and brings it more in line with our opinions in *Murphy* and *Graves*. "The defendant in *Wilson* completed one sexual assault and then elected to seek out another victim in another location after completing the first crime and leaving the first location." *Murphy*, 107 F.3d at 1210. By contrast, in this case the sexual assault started when both men entered the women's vehicle and did not end until both men exited the vehicle when they thought they had seen a police car. It is not sufficient to argue, as the government has argued in this case, that the rapes were necessarily sequential because it was physically impossible for Thomas to rape two women at one time. We cannot ignore the fact that the crime encompassed more than sexual penetration. Thomas and Bucky asserted dominion and control over both women at the same time. They kept both women under their control throughout the duration of this incident. There was no conclusion of Thomas' criminal activity against the first woman when he began raping the second woman. With the assistance of his accomplice, Thomas carried out his aggressions against the two women simultaneously.

Thomas' rapes of the two women cannot be deemed to have been "committed on occasions different from one another." Both rapes were part of one continuous episode. Each rape was not a "punctuated occurrence with a limited duration." *See Brady*, 988 F.2d at 668. Rather, the rapes of both women were part of a single, ongoing criminal episode.

*Thomas*, 211 F.3d at 320–21. Notwithstanding that application of the three-factor test would lead to the conclusion that the rapes constituted separate criminal episodes, we looked to the totality of the circumstances and determined that there was a continuous criminal episode encompassing both rapes.

Similarly in *Graves*, in determining whether the burglary and assault were committed "on occasions different from one another," as required by the ACCA, we used the factors listed so neatly in *Jones* only as proxies to answer that question, not as tests that could independently establish armed career criminal status. As in *Thomas*, Graves had completed the first offense (the burglary) when he committed the second (the assault); he could have refrained from committing the second and either submitted to the officer's authority or continued running without pointing a gun at the officer; and, the offenses were committed in separate locations, the house and the woods. Yet, again, we evaluated the overall circumstances and concluded that there was only one criminal episode. A proper understanding of *Graves* is that generally when a defendant is evading or resisting arrest for an offense immediately following that offense, we will view subsequent offenses arising out of the evasion or resistance are part of the same criminal episode. In *Graves*, we compared the facts to an Eleventh Circuit case in which the defendant burglarized a home and then hid in a closet in a second home. *Id*. (citing *United States v. Sweeting*, 933 F.2d 962 (11th Cir. 1991)). One could say that breaking into the second home constituted a "break" or that the defendant could have ceased his conduct after leaving the first home, and yet there, too, the various burglary offenses constituted a single criminal episode. *Id*.

In the present case, Mann committed his second offense immediately after his arrest for the first offense. He was in a bar when he got into an argument with another patron; they exited and Mann cut the patron with a knife, slicing open a ten-inch wound. Police arrested him and put him in the back of a squad car, where still under the influence, he began kicking the door of the car, demonstrating that he was clearly still upset. When the officers came back to remove him from the car, his agitation continued, culminating in his assault on the officer. There was no "time to reflect" on his actions before he ceased his conduct and no "break" in which he could cool off. *See United States v. Banner*, No. 12-5062, 2013 WL 1235656, at *2 (6th Cir. Mar. 27, 2013) (concluding that two drug offenses were separate criminal episodes because the defendant had "time to reflect"). The mere fact that he was actually under arrest, as distinguished from being in the process of being apprehended, is an artificial distinction under the circumstances that he had not calmly submitted to the officer's authority and was still under the influence of the emotions of the underlying event and the same alcohol. The two offenses occurred in as close physical proximity as the two offenses in *Graves* and *Thomas*. Mann's two 1993 offenses were not separate criminal episodes according to any ordinary understanding of these terms.

The district court's decision is understandable, as were the sentencing courts' decisions in *Graves* and *Thomas*. However, as in *Graves* and *Thomas*, the court erred in treating the three-factor test of *Hill* and *Jones* as determinative of the issue without further considering the totality of the circumstances of Mann's prior offenses in light of the entire body of the law in this circuit discussing and applying the "occasions different from one another" provision of the ACCA.

In light of this conclusion, we need not address Mann's Eighth Amendment argument, except to observe that our precedent does not support it. *See United States v. Moore*, 643 F.3d 451, 455 (6th Cir. 2011).

IV.

Our conclusion also renders Mann's motion to strike his original brief moot, and we deny it as such. Although our precedent does not require us to consider Mann's three pro se supplemental arguments, *see, e.g., United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009) ("[The appellant] raises a number of additional pro se claims, but we decline to address them because he is represented by counsel."); *United States v. Jenkins*, 229 F. App'x 362, 370 (6th Cir. 2005) ("[W]e do not ordinarily consider pro se claims brought by a defendant represented by counsel on appeal."), we do so to make two brief observations. First, Mann's sufficiency of the evidence and probable cause arguments, which are directed to his § 922(g)(1) conviction for being a felon in possession of a firearm, are precluded by his guilty plea. *See United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008). Mann does not challenge the plea as conditional or involuntary, *see id.*, nor does the record disclose any attempt by Mann to withdraw it, *see* Fed. R. Crim. P. 11(d)(2)(B); *cf. United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (noting that the purpose of Rule 11(d)(2)(B) is "not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice" (citation and internal quotation marks omitted)). Accordingly, these arguments are without merit, and we reject them.

Second, we note that collateral review generally is a more appropriate channel for the resolution of ineffective assistance of counsel claims than direct appeal. *See, e.g., United States v. Brown*, 276 F.3d 211, 217-18 (6th Cir. 2002) (deferring review "to a post-conviction proceeding where the record may be fully developed"). We therefore decline to address Mann's ineffective assistance of counsel claim at this time, concluding that it "must be addressed in the first instance by a district court pursuant to a claim under 28 U.S.C. § 2255." *United States v. Gunter*, 620 F.3d 642, 643 n.1 (6th Cir. 2010).

V.

We REVERSE and REMAND for re-sentencing.

COOK, Circuit Judge, dissenting. In reversing the district court's application of the ACCA enhancement, the majority disregards key features of our precedents and the district court's findings of fact. I respectfully dissent.

The majority's restatement of the ACCA standard and the *Hill* considerations gets it mostly right. True, we define "criminal episode" in this context as "a punctuated occurrence with a limited duration." *United States v. Brady*, 988 F.2d 664, 668 (6th Cir. 1993) (en banc) (citation omitted). And *Hill* distilled "three indicia" from our caselaw "that offenses are separate from each other": (1) distinctive beginning and end to each offense, (2) opportunity to cease conduct after the first, and (3) separate locations. *United States v. Hill*, 440 F.3d 292, 297–98 (6th Cir. 2006).[2]

Yet, in viewing two pre-*Hill* decisions, *Thomas* and *Graves*, as incompatible with the *Hill* approach, the majority elides *Hill*'s treatment of those cases. *See Hill*, 440 F.3d at 297 (explaining that *Graves* and *Thomas* involved criminal conduct of a continuing nature). The court likewise eschews our en banc holding in *Brady* that "offenses committed by a defendant at *different times and places* and *against different victims*, although committed within less than an hour of each other, are separate and distinct criminal [ACCA] episodes." *Brady*, 988 F.2d at 669 (emphasis added). And *United States v. Wilson*—a precedent predating both *Thomas* (2000) and *Graves* (1995)—receives hardly a mention. *See* 27 F.3d 1126, 1131 (6th Cir. 1994) (concluding that sexual assaults committed on the same evening in the same house constituted separate ACCA-qualifying crimes, explaining under *Brady* that the "[d]efendant could have halted his criminal rampage at any time," but "he chose to continue selecting different victims in separate places"). In the absence of new

---

[2]Our recent decision in *United States v. Jones* arguably expanded the reach of the *Hill* factors, delimiting that "[o]ffenses are separate if they meet *any* of these three tests." 673 F.3d 497, 503 (6th Cir. 2012). But the only case cited for this proposition, *United States v. Paige*, 634 F.3d 871, 873 (6th Cir. 2011), avoids such a broad reading. In light of *Jones*'s holistic treatment of the *Hill* factors, *see* 673 F.3d at 504 (finding that the conduct qualified as separate offenses under each of the *Hill* factors), *Hill* guides me to treat the factors only as helpful "indicia."

legislation or an intervening decision by the Supreme Court or the en banc court, the majority should adhere to the existing precedents.

Both *Brady* and *Wilson*—emphasizing the different times, places, and victims of their criminal episodes—justify the ACCA enhancement here. As the majority concedes, Mann's post-arrest assault occurred after the bar fight, in a different location (exiting the police vehicle), and injured a different victim (the officer). Our decisions in *Thomas* and *Graves*, the majority's strongest counter-authority, preserve these principles. Whereas the *Brady* and *Wilson* crimes had "definable endpoint[s]," the defendants in *Thomas* committed a continuing crime by "assert[ing] dominion and control over both women . . . throughout the duration of [the abduction and sexual assaults]." *United States v. Thomas*, 211 F.3d 316, 321 (6th Cir. 2000). Similarly, the assault occurring during officers' hot pursuit of a burglar in *Graves* could not be separated from the robbery they interrupted; one crime (burglary) flowed into the next (fleeing, assaulting officer). *United States v. Graves*, 60 F.3d 1183, 1187 (6th Cir. 1995) ("Defendant's assault upon the officer at the same location and within moments of the burglary, leads us to conclude that the assault was part of the same criminal episode."). Apparently dissatisfied with *Hill*'s attempt to reconcile *Thomas* and *Graves* with the *Brady/Wilson* line of cases, the majority elects to follow the later cases, contrary to our standard practice. *E.g.*, 6 Cir. R. 32.1(b) ("Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc."); *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) (same).

Compounding the error, the court substitutes its factual findings for those of the district court. *See United States v. Martin*, 526 F.3d 926, 938 (6th Cir. 2008) (reviewing for clear error the district court's factual determinations bearing on whether "prior convictions are distinct criminal episodes").[3] After reviewing the PSR and Mann's ACCA objection, the district court found:

---

[3]At first blush, *Martin* appears to stand alone in our jurisprudence in its deferential review of the district court's separate-criminal-episode findings under ACCA. *Cf. Jones*, 673 F.3d at 503 (de novo review); *Hill*, 440 F.3d at 295 (same); *United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997) (same, referring to the ACCA issue as a "legal question concerning

> Mr. Mann's battery against the first victim was the subject of the assault with the knife, was clearly completed at the time he kicked the police officer. He'd already been arrested and placed in the police cruiser, and he certainly could have ceased his criminal conduct after the first offense.

> The fight was over, essentially, at that point, but he initiated the further violence against the police officer. And under the factors that I've outlined that are reflected in *United States v. Hill*, the facts of this case would certainly indicate that those would be two separate offenses.

(R. 31, Sent'g Tr. at 11.) Not so, according to the majority, whose review of the cold record leads it to find different facts: (a) "Mann committed his second offense immediately after his arrest," (b) while "under the influence," and (c) while "clearly still upset" from the initial encounter, necessitating the conclusion that "[Mann] had not calmly submitted to the officer's authority and was still under the influence of the emotions of the underlying event and . . . alcohol." Notably, the immediacy and drunkenness findings so important to the majority's reasoning appear nowhere in Mann's appellate briefing.

---

the interpretation of a statute"). Yet, the first of these de novo cases, *Graves*, qualified its review of the ACCA issue with the caveat that "the key facts are not in dispute." *Graves*, 60 F.3d at 1185. To me, *Martin* got it right: the clear-error standard applies to factual disputes in this sentencing context, as in others, and appellate judges ought not substitute their findings of fact for those of the district court. *See, e.g.*, 18 U.S.C. § 3742(e); *United States v. Stubblefield*, 682 F.3d 502, 510 (6th Cir. 2012).

No. 12-5541
*United States v. Mann*

In the end, the most troubling aspect of the majority's decision is the vague standard it employs to review ACCA enhancements. While ostensibly conceding that Mann's conduct satisfies *all* of the *Hill* factors, *see* majority at 6 (explaining that this "cannot in itself be enough"), the court nevertheless invokes "the totality of the circumstances" to reverse the district court's "understandable" application of the ACCA enhancement, *id.* at 10. By telling district courts that we may reverse ACCA enhancements even when all of the factors support it, we undermine *Hill*'s synthesis of our ACCA caselaw.

In my view, the district court correctly applied the ACCA enhancement, and the Eighth Amendment permits the statutorily authorized 15-year sentence. *See United States v. Moore*, 643 F.3d 451, 455 (6th Cir. 2011) ("[A] sentence within the statutory maximum . . . generally does not constitute cruel and unusual punishment." (brackets and internal quotation marks omitted)); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991) (applying the "narrow proportionality principle" articulated by Justice Kennedy's concurring opinion in *Harmelin v. Michigan*, 501 U.S. 957, 996–97 (1991)). Although Mann's current conviction—possessing a hunting rifle on his land—seems rather modest, the district court properly counted Mann's prior convictions for gross sexual imposition and aggravated assault, aggravated battery, and battery of an officer in applying the armed-career-criminal enhancement. I respectfully dissent.