RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　　　　　　*Plaintiff-Appellee,*

　　　　*v.*

MARTINO MOORE,
　　　　　　　　　*Defendant-Appellant.*

No. 09-5935

———————————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-20049-001—S. Thomas Anderson, District Judge.

Argued: January 21, 2011

Decided and Filed: June 1, 2011

Before: MARTIN and STRANCH, Circuit Judges; THAPAR, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** David M. Bell, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Daniel T. French, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** David M. Bell, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Daniel T. French, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

———————————

## OPINION

———————————

THAPAR, District Judge.　Defendant Martino Moore, a four-time convicted felon, possessed a firearm one night in 2007.　That event carried with it serious

—————————————

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

ramifications.  It meant as an Armed Career Criminal he was subject to a mandatory minimum penalty of 180 months' imprisonment.  Moore argues on appeal that the imposition of this mandatory minimum sentence, as applied to him, violates the Eighth Amendment.  We disagree and thus affirm.

**I.**

On March 9, 2007, Memphis police responded to a call about an assault.  At the scene, police interviewed Precious Jackson.  She claimed that her boyfriend Moore beat her, pointed a firearm at her, and threatened to kill her.  Two witnesses informed the officers that they had seen Moore beat Jackson and that he had a firearm.  But neither witness saw Moore point the gun at Jackson.  The police located Moore near the scene with the firearm, an AMT .22 caliber semi-automatic pistol, still in his possession.  They arrested him without incident.

Moore explained that the fight erupted when Jackson took his cell phone.  He claimed that he took the gun away from her during the fight, but he denied hitting or pointing the gun at her.

On February 15, 2008, a federal grand jury in the Western District of Tennessee indicted Moore for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  Moore's attorney requested that Moore undergo a competency evaluation.  On June 3, 2008, doctors at the Federal Medical Center in Kentucky diagnosed Moore with mild mental retardation[1] but concluded that he was nevertheless competent to stand trial.  The doctors found that Moore had a factual and rational understanding of the proceedings against him and retained the ability to consult with his attorney. Moore did not challenge these findings and later pleaded guilty under a written plea agreement.

Moore's Presentence Report listed two violent felonies and two serious drug felonies:  (1) a 1994 conviction for aggravated burglary; (2) a 1997 conviction for criminal attempt to commit aggravated burglary; (3) a 2000 conviction for possession

---

[1]Like the briefs and doctors, we use the term "mental retardation" in order to be medically precise.  We mean no disrespect by using the term.

of crack cocaine with intent to manufacture, deliver, or sell; and (4) another 2000 conviction for possession of crack cocaine with intent to manufacture, deliver, or sell. PSR, ¶¶ 25, 26, 28, 30. As a result, he qualified as an "Armed Career Criminal" under U.S.S.G. § 4B1.4(b)(3)(A) and 18 U.S.C. § 924(e). He also received a four-level enhancement for being a felon in possession of a firearm in connection with another felony offense—aggravated assault. His guideline range was 188-235 months, with a statutory minimum of 180 months under § 924(e).

Moore objected to the four-level enhancement at the sentencing hearing. Because the United States could not locate Ms. Jackson to confirm whether Moore had in fact pointed the gun at her or hit her with the gun, it agreed that Moore's offense level should be reduced, with a new corresponding guideline range of 151-188 months. But under § 924(e), the mandatory minimum sentence still stood at 180 months. Moore's attorney told the court that he knew of no grounds permitting the court to go below the 180-month minimum. The district court judge remarked that, if he had the authority to do so, he would consider imposing a sentence below the statutory minimum due to the circumstances of the offense and Moore's mental deficiencies. R. 49 at 32. He nevertheless acknowledged that he did not possess that authority and proceeded to sentence Moore to 180 months' imprisonment. Moore filed a timely appeal.

## II.

Moore argues that his mandated minimum sentence of fifteen years' imprisonment violates the Eighth Amendment's ban on cruel and unusual punishment. At the heart of his argument is the belief that a unique mitigating factor—his reduced culpability resulting from mental retardation—transforms an otherwise constitutional sentence into an unconstitutional one. In *United States v. Tucker*, we held that "[i]mposing a mandatory minimum sentence on a defendant with limited mental capabilities does not violate the Eighth Amendment ban against cruel and unusual punishment." 204 F. App'x 518, 521 (6th Cir. 2006). We see no reason to depart from *Tucker*. Further, all of the circumstances of this case, including Moore's mildly

diminished mental capacity, convince us that the district court's sentence was not grossly disproportionate to the crime committed.

**A.**

As an initial matter, "[a] constitutional challenge to a sentence is a question of law and reviewed *de novo*." *United States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009) (quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)).  While it appears that Moore may not have raised this issue below, we need not decide whether plain error review is appropriate because his argument fails even under *de novo* review.

**B.**

The Eighth Amendment provides:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  Moore is correct that the Supreme Court has interpreted the Eighth Amendment to contain a "narrow proportionality principle." *Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring); *United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003).  But that interpretation "does not require strict proportionality between crime and sentence." *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring) (citing *Solem v. Helm*, 463 U.S. 277, 288 (1983)); *see also Rummel v. Estelle*, 445 U.S. 263, 271 (1980) (Eighth Amendment "prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime"); *Coker v. Georgia*, 433 U.S. 584, 592 (1977) (Eighth Amendment prohibits "grossly disproportionate" sentences); *Weems v. United States*, 217 U.S. 349, 371 (1910) (Eighth Amendment prohibits "greatly disproportioned" sentences (quoting *O'Neil v. Vermont*, 144 U.S. 323, 340 (1892) (Field, J., dissenting)).  Nor does it require consideration of a defendant's mitigating factors. *Harmelin*, 501 U.S. at 995.  Rather, "only an extreme disparity between crime and sentence offends the Eighth Amendment." *Layne*, 324 F.3d at 474 (quoting *Marks*, 209 F.3d at 583).

While we have traditionally not engaged in proportionality review when the sentence is a term of years, *see United States v. Thomas*, 49 F.3d 253, 261 (6th Cir.

1995), Justice Kennedy's concurrence in *Harmelin* has slightly opened the door to such analysis, *see United States v. Hughes*, 632 F.3d 956, 960 n.2 (6th Cir. 2011). This analysis begins with a comparison of the gravity of the offense and the severity of the sentence. *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring). The comparison here simply does not lead to an inference of gross disproportionality. Moore's prior qualifying sentences included two violent felonies involving aggravated burglary and two involving distribution of crack cocaine. On the night of his arrest in the present matter, witnesses reported seeing Moore beat his girlfriend while holding a firearm. His were not victimless, nonviolent crimes. Despite all this, Moore actually received the *minimum* sentence under the statute. And "[a] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *Layne*, 324 F.3d at 474 (quoting *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)).

Contrary to Moore's claim, this sentence *did* account for his mental retardation. Even though the guidelines authorized a sentence up to 188 months, the statute imposed no such cap. *See Custis v. United States*, 511 U.S. 485, 487 (1994) (noting that § 924(e) authorizes the imposition of a life sentence). Here, the district court sentenced him at the very bottom of the guideline range, expressly noting Moore's condition while pronouncing his sentence. R. 49 at 31-32. But even if the district court had not taken account of his mental retardation, the imposition of a mandatory sentence without considering mitigating factors does not, as Moore claims, run afoul of the Eighth Amendment. In *Harmelin v. Michigan*, the Supreme Court upheld a mandatory life sentence for the possession of 650 grams of cocaine even where the state court gave no consideration to the defendant's felony-free record. 501 U.S. at 995. The Court specifically rejected the petitioner's "required mitigation" claim, refusing to extend the "individualized capital-sentencing doctrine" to a mandatory sentence of life in prison without parole. *Id*. The argument for requiring consideration of the defendant's mitigating factors is no stronger here.

The acknowledgment in *Atkins v. Virginia* that mentally retarded defendants are "categorically" less culpable than average criminals likewise fails to render this statutory

penalty unconstitutional. 536 U.S. 304, 316 (2002). As this Court recognized in *Tucker*, *Atkins* dealt specifically with the death penalty. *Tucker*, 204 F. App'x at 521-22. And, as this and many other courts have held, death is simply different. *Getsy v. Mitchell*, 495 F.3d 295, 306 (6th Cir. 2007) (en banc) ("It is now also well settled that the penalty of death is different in kind from any other punishment imposed under our system of justice."). The death penalty is "unique in its total irrevocability," "its rejection of rehabilitation of the convict as a basic purpose of criminal justice," and "its absolute renunciation of all that is embodied in our concept of humanity." *Harmelin*, 501 U.S. at 995-96 (quoting *Furman v. Georgia*, 408 U.S. 238, 306 (1972) (Stewart, J., concurring)). The same cannot be said of a statutorily-mandated sentence of fifteen years.

Further, *Atkins* did not offer a blanket exemption from ordinary punishments to the mentally handicapped or cast aside mandatory minimum sentences. Rather, the Court recognized that mentally retarded defendants face a special risk of wrongful execution because they may have difficulties assisting their counsel, they are often poor witnesses, and their demeanor may convey an "unwarranted impression of lack of remorse for their crimes." *Atkins*, 536 U.S. at 320-21. Also, concerns about culpability were uniquely acute in the context of death. Evidence showed that mentally retarded individuals often act on impulse rather than with premeditation. *Id*. at 318. But these deficiencies did not warrant their exemption from punishment. *Id.* Justice Stevens's introductory line in *Atkins* resolved any doubt on this question: "Those mentally retarded persons who meet the law's requirements for criminal responsibility should be tried and punished when they commit crimes." *Id.* at 306.

This does not mean that a defendant's culpability is irrelevant in non-capital cases. In considering whether a punishment is grossly disproportionate, culpability plays a role. *Solem*, 463 U.S. at 293. For example, a murder-by-contract may be viewed more seriously than other types of murder. *Id*. at 293-94. A juvenile's reduced culpability most certainly played a role in *Graham v. Florida*, 130 S. Ct. 2011, 2026 (2010). And even here, Moore's diminished culpability played a role in the district court's decision

to impose the minimum penalty under the statute.  Still, we cannot say Moore's mildly diminished mental capacity warrants a finding of gross disproportionality.

Fifteen years is by any measure a considerable amount of time.  But while "[s]evere, mandatory penalties may be cruel, . . . they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history."  *Harmelin*, 501 U.S. at 994-95.  In general, Eighth Amendment jurisprudence grants "substantial deference" to the legislatures who determine the types and limits of punishments.  *Id.* at 999 (Kennedy, J., concurring).  It is settled that legislatures may define criminal punishments without giving courts sentencing discretion.  *Id.* at 1006 (citing *Chapman v. United States*, 500 U.S. 453, 467 (1991)).  In fact, this Court has previously held that the very punishment Moore received—fifteen years under the Armed Career Criminal Act—withstands Eighth Amendment review as applied to the facts of those cases.  *United States v. Warren*, 973 F.2d 1304, 1311 (6th Cir. 1992); *United States v. Pedigo*, 879 F.2d 1315, 1320 (6th Cir. 1989).  Other courts of appeals have reached the same conclusion.  *See, e.g.*, *United States v. Cardoza*, 129 F.3d 6, 18 (1st Cir. 1997); *United States v. Presley*, 52 F.3d 64, 68 (4th Cir. 1995); *United States v. Hayes*, 919 F.2d 1262, 1266 (7th Cir. 1990); *United States v. Baker*, 850 F.2d 1365, 1372 (9th Cir. 1988); *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000).  And we are aware of no court of appeals decision that has struck down the Armed Career Criminal Act as violative of the Eighth Amendment.

Because a "threshold comparison" of the gravity of Moore's offense and the severity of his sentence does not reveal an inference of gross disproportionality, we need not engage in the second step of the proportionality analysis by comparing his sentence with those of offenders in this and other jurisdictions.  *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring).

## C.

Moore's suggestion that his sentence is rendered unconstitutional by the decision in *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010), is also unavailing.  The *Graham*

Court's holding was narrow:  The Eighth Amendment prohibits the sentence of life without parole for juvenile offenders who do not commit homicide.  *Id*. at 2030.  In adopting a categorical approach, the Court drew a line exempting a specific class of offender (juveniles who do not commit homicide) from a specific punishment (life without the possibility of parole).  But this approach does not apply in every Eighth Amendment challenge.

To begin, the penalty was unusually grave.  Along with death sentences, sentences of life without the possibility of parole are unique in their severity.  *Id*. at 2027 (citing *Harmelin*, 501 U.S. at 1001).  And that grave penalty carried with it unique consequences for the particular defendant—a juvenile offender.  *Id*. at 2028.  His young age meant that he would spend longer behind bars than similar adult offenders sentenced to life.  *Id*.  What's more, the penological theories underlying the imposition of life-without-parole sentences—retribution, deterrence, incapacitation, and rehabilitation—did not hold up as applied to Graham.  *Id*.  Such a sentence would in essence require the sentencing court to conclude that the juvenile offender had no possibility of rehabilitation.  While defendants like Graham deserve to be separated from society for some time, "it does not follow that [they will] be a risk to society for the rest of [their lives]."  *Id*. at 2029.

The unique concerns that prompted the Supreme Court to closely scrutinize the sentence in *Graham* are not present here.  Most significantly, Moore's fifteen-year sentence is vastly lighter.  Unlike a juvenile non-homicide offender sentenced to life without parole, Moore will likely see the outside of a prison.  He has hope for eventual release in a way that Graham did not.  Also, the rehabilitation opportunities not available to juvenile non-homicide offenders sentenced to life without parole will be available to Moore.  Moore can take advantage of the rehabilitative services of which the Court spoke in *Graham*.  *Id*. at 2030.

Further, Moore is an adult.  The *Graham* Court noted that real differences exist between juvenile and adult minds.  *Id*. at 2026.  It recognized that juveniles possess the ability to change, with their actions less likely revealing "evidence of 'irretrievably

depraved character' than . . . the actions of adults." *Id*. (citing *Roper*, 543 U.S. at 570). Like a juvenile, a mentally retarded defendant may not have the same mental capabilities as those of a fully functioning adult. But the real concern in *Graham* went beyond the basic differences in juvenile and adult minds. The concern was that a sentence of life without parole could not account for the possibility that the juvenile's mind would grow and change over time. A term-of-years sentence such as Moore's would not present this same dilemma.

Thus, the Supreme Court's concerns in *Graham* are simply not present here.

## III.

Moore's Eighth Amendment challenge to his sentence fails even under a *de novo* standard of review. We therefore **AFFIRM** the sentence of the district court.