NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0743n.06

No. 10-6458

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Nov 01, 2011**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                )
                                         )
    Plaintiff-Appellee,              )
                                         )
v.                                       )  ON APPEAL FROM THE UNITED
                                         )  STATES DISTRICT COURT FOR THE
DAVID E. BROWN                           )  EASTERN DISTRICT OF TENNESSEE
                                         )
    Defendant-Appellant.            )


Before: SUTTON and McKEAGUE, Circuit Judges; JONKER, District Judge[*]


SUTTON, Circuit Judge. David Brown appeals his conviction and sentence for being a felon in possession of a firearm. We affirm.


I.


When a Glock .40 caliber pistol and a silver necklace disappeared from his home, Jason Helms suspected David Brown was the culprit. Detective Robert Harbison located Brown and brought him to the station for questioning. Harbison read Brown his *Miranda* rights and, after securing a written waiver, asked him about the robbery. Brown confessed he had taken the gun and traded it for methamphetamine. He promised to try to get the gun back, but he would not disclose who had it.

---

[*]The Honorable Robert Jonker, United States District Judge for the Western District of Michigan, sitting by designation.

Two months later, a federal grand jury indicted Brown for being a felon in possession of a firearm. After taking Brown back into custody, Detective Carl Maskew again read Brown his *Miranda* rights, and Brown again waived his rights in writing. After denying that he knew anything about the robbery, Brown told Maskew a different story: Brown claimed that two other individuals took the gun from Helms' house and gave it to him. He then traded the gun to his cousin for methamphetamine. Brown again promised to help retrieve the gun.

Before trial, Brown moved to suppress both statements. Finding no evidence that the police "engaged in any sort of threatening or coercive behavior" or that Brown did not understand his rights, the district court denied the motion. The jury convicted Brown, but the district court granted his post-verdict motion for acquittal, holding that the only pieces of evidence linking him to the crime were his uncorroborated confessions, which could not sustain the conviction by themselves. The United States appealed and we reversed, holding that "sufficient independent evidence establishe[d] the trustworthiness of Brown's statements." *United States v. Brown*, 617 F.3d 857, 859 (6th Cir. 2010).

On remand, the district court concluded that Brown's three prior state convictions for aggravated burglary made him an armed career criminal, subjecting him to a mandatory minimum sentence of 180 months. 18 U.S.C. § 924(e). Even though Brown's advisory guidelines range was 210 to 262 months, the district court imposed the mandatory minimum—180 months.

II.

*Corroboration.* With respect to his conviction, Brown seeks to relitigate whether sufficient evidence corroborated his confessions, but that ship has sailed. In the first appeal, we held that other evidence adequately corroborated Brown's confessions, 617 F.3d at 863–64, and if Brown thought our decision "overlooked or misapprehended" any questions "of law or fact," he could have filed a petition for rehearing. Fed. R. App. P. 40(a). He did not. Nor has Brown identified any change in controlling authority. That decision binds us here.

*Suppression of Statements.* Brown made two statements to police in which he confessed that, one way or another, he had possessed the gun that was stolen from Helms' house. Brown made these statements two months apart, and the officers each time read the *Miranda* warnings to him and secured a written waiver, which "generally produce[s] a virtual ticket of admissibility." *Missouri v. Seibert*, 542 U.S. 600, 609 (2004). Brown nevertheless argues that the district court should have suppressed these statements because his cognitive infirmities and the possibility that he was under the influence of drugs mean that he did not knowingly and intelligently waive his *Miranda* rights.

The district court found "nothing in the record whatsoever" suggesting that Brown "did not understand his legal rights" or "the gravity of his waiver of those rights," R. 46 at 12, and Brown has not identified any evidence demonstrating clear error. The only evidence of cognitive impairments that Brown mentions is a psychological evaluation that the Bureau of Prisons performed to assess his competency to stand trial. Although the evaluation states that Brown has some "relatively mild

intellectual limitations," it found no "significant impairment in his ability to comprehend basic information provided to him or to make reasoned decisions based on this information." Competency Evaluation at 8. The evaluation concluded that Brown was competent to stand trial. The district court found, quite correctly, that the competency evaluation supported rather than undermined the conclusion that Brown knowingly and intelligently waived his *Miranda* rights. "[T]here is nothing cognitively complex about" the *Miranda* warnings; this is not Heisenberg's Uncertainty Principle after all but the straightforward "advice that one has a right to remain silent and not to talk to the police." *Jackson v. McKee*, 525 F.3d 430, 436 (6th Cir. 2008). Brown's mild cognitive limitations do not defeat the waivers.

As to drug use, Brown speculates that his status as an addict and his fidgeting during one of the interviews suggest that he might have been under the influence of methamphetamine when he made the statements. But Detectives Harbison and Maskew testified that Brown did not appear to be under the influence of drugs when they interviewed him. Brown's speculation—and that is all it is in the absence of any evidence on this score—does not show clear error in the district court's determination that he knowingly and intelligently waived his *Miranda* rights.

Brown also argues that his cognitive impairments and possible drug use rendered his waiver, and the confessions themselves, involuntary. But some kind of "coercive police activity" is required to establish that a waiver of *Miranda* rights, or a confession for that matter, was involuntary. *Colorado v. Connelly*, 479 U.S. 157, 167, 169–70 (1986). The district court did not find, and Brown has not identified, any coercive or threatening behavior by the officers who took his statements.

Brown contends only that he suffered "from a condition or deficiency that impaired his cognitive or volitional capacity," but that "is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process." *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989). "[S]ome element of police coercion" remains "necessary." *Id*. In the absence of police coercion, we have affirmed the admission of confessions made by defendants who were actually (as opposed to possibly) under the influence of drugs, *see, e.g.*, *United States v. Dunn*, 269 F. App'x 567, 572–73 (6th Cir. 2008); *United States v. Chapman*, 112 F. App'x 469, 474 (6th Cir. 2004), as well as confessions made by defendants who suffered from mental retardation, *see, e.g.*, *United States v. Macklin*, 900 F.2d 948, 951–52 (6th Cir. 1990). The district court did not err in admitting Brown's statements.

*Armed Career Criminal Act*. The district court correctly determined that Brown qualified as an armed career criminal. As relevant here, ACCA imposes a mandatory minimum sentence of 180 months on anyone who is convicted of being a felon in possession of a firearm and has three previous convictions for "violent felon[ies]," which the Act defines to include "burglary." 18 U.S.C. § 924(e). "[B]urglary," as used in § 924(e), encompasses "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). Brown has three prior convictions for aggravated burglary in Tennessee. PSR ¶¶ 26–28. The charging documents for these offenses—which a court may examine in determining whether the convictions constitute "burglary" under § 924(e), *Shepard v. United States*, 544 U.S. 13,

26 (2005)—show that all three satisfy the *Taylor* elements. In each case Brown pled guilty to an indictment charging him with "unlawfully enter[ing] the habitation" of another "with intent to commit theft." R. 89-1 at 2; R. 89-2 at 2. Because Brown "necessarily admitted" that he satisfied the *Taylor* elements for all three crimes by pleading guilty to the indictments, the district court correctly applied ACCA's mandatory minimum to him. *Shepard*, 544 U.S. at 16.

*Constitutionality of ACCA in this setting.* Brown argues that ACCA's mandatory minimum as applied to him violates his Fifth Amendment right to due process and equal protection and his Eighth Amendment right to be spared cruel and unusual punishment. We have seen this movie before, and each time it ends badly for the defendant. *See, e.g.*, *United States v. Moore*, 643 F.3d 451, 456 (6th Cir. 2011); *United States v. Jones*, 52 F. App'x 244, 247 (6th Cir. 2002); *United States v. Warren*, 973 F.2d 1304, 1311 (6th Cir. 1992). All for good reason: "Congress has the power to define criminal punishments without giving the courts any sentencing discretion," *Chapman v. United States*, 500 U.S. 453, 467 (1991), and mandatory prison sentences are not cruel and unusual, *Harmelin v. Michigan*, 501 U.S. 957, 995–96 (1991). In the teeth of these precedents Brown has not identified, nor have we found, any decision from any court invalidating the application of ACCA's mandatory minimum to an individual on constitutional grounds. Brown gives no good reason for making this case the first.

III.

For these reasons, we affirm.