RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0160p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

JAY J. NAGY,

        *Defendant-Appellant*.

No. 13-4151

---

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:13-cr-00138-1—James S. Gwin, District Judge.

Decided and Filed: July 24, 2014

Before: COLE, ROGERS, and ALARCÓN, Circuit Judges.[*]

---

**COUNSEL**

---

**ON BRIEF:** Jeffrey B. Lazarus, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, Melissa M. Salinas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

    ROGERS, Circuit Judge. Jay J. Nagy appeals his mandatory minimum sentence of fifteen years' imprisonment for being a felon in possession of a firearm and ammunition, and for knowingly possessing a stolen firearm. Nagy argues that his sentence violates his Sixth

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Amendment rights because his three prior convictions, which enhanced his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), were not submitted to the jury or proven beyond a reasonable doubt, as required by the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). In addition, Nagy contends that his sentence is unconstitutional under the Eighth Amendment because it is contrary to the evolving national consensus and standards of decency. Contrary to Nagy's assertion, *Alleyne* does not require that a defendant's prior convictions be submitted to a jury, even if those convictions increase a defendant's statutory penalties. In addition, Nagy's Eighth Amendment claim is foreclosed by this court's decision in *United States v. Moore*, 643 F.3d 451 (6th Cir. 2011), which squarely held that a fifteen-year mandatory minimum sentence under the Armed Career Criminal Act is not cruel and unusual punishment.

On a snowy night in February 2013, an Akron police officer witnessed Nagy rummaging for change in a car that was not his. The officer asked Nagy to come over and talk to him, and, fearing that Nagy would run, placed him in handcuffs. Officer Metzger asked Nagy whether "he had anything sharp on him that would poke, pinch, or stab" Metzger. Nagy immediately told Metzger that he had a gun in his pocket, which Nagy had taken from a car by mistake. Nagy testified that he had intended to dispose of the gun safely by putting it in a U.S. Post Office Box, and was searching for a mailbox when he stopped to take change from a car as Metzger drove by. Metzger searched Nagy and found a large amount of change, DVDs, Nintendo games, multiple cell phones, several iPods, garments, costume jewelry, cologne, cigarettes, medications, and lighters—none of which belonged to Nagy.

The government charged Nagy with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and with knowingly possessing a stolen firearm, in violation of 18 U.S.C. § 922(j). A jury found Nagy guilty of both counts. In a sentencing memorandum, the government argued that Nagy qualified for a sentence enhancement under the Armed Career Criminal Act (ACCA) because Nagy had "been previously convicted of six separate violent felonies that he committed on occasions separate from one another, which qualify as predicate offenses for the ACCA . . . . Consequently, a fifteen-year mandatory minimum sentence is statutorily required."

In response, Nagy contended that the ACCA could not apply to him because under the Supreme Court's decision in *Alleyne*, the government was required to submit the facts of Nagy's prior convictions to a jury, and to prove them beyond a reasonable doubt. Nagy acknowledged that, "[t]he Alleyne Court did not specifically address whether prior convictions are elements" of a § 924(c) offense that must be submitted to a jury, but argued that, nevertheless, "[t]he Court's broad language that 'any fact that increases the mandatory minimum is an element' seems to indicate that prior convictions must be submitted to the jury as well." Nagy read *Alleyne* as implicitly overruling the Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 241–42 (1998), which held that prior convictions that enhance a defendant's sentence are not elements of a crime that must be submitted to a jury, and as expanding and applying the Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Nagy requested that if the district court found that the ACCA applied to his case, the district court sentence him to the statutory mandatory minimum of 180 months.

The government maintained that even though "[i]n *Alleyne*, the Court extended the *Apprendi* rule to facts that increase a mandatory-minimum sentence and held that such facts must be submitted to the jury, . . . the Court stated that prior convictions that increase a defendant's statutory penalties, such as those penalties that qualify under the ACCA, are not elements of the offense that the government is required to prove to a jury." The government also opposed Nagy's request for a downward variance.

At sentencing, the district court revealed that as part of an ongoing "process to test whether or not the Sentencing Guidelines reflect community sentiment," the court had distributed post-trial surveys to Nagy's jurors, asking them to "state what you believe an appropriate sentence is in months" for Nagy's crime, given "every past conviction of the Defendant." The median recommended sentence was 18 months' imprisonment. The district court agreed with Nagy that *Alleyne*'s "central principle seems to call [*Almendarez-Torres*] specifically in doubt," but noted that the Court "didn't specifically overrule" it. In addition, the district court acknowledged that in *United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013), the Sixth Circuit stated explicitly that, "Although *Almendarez-Torres* may stand on shifting sands, the case presently remains good law and we must follow it until the Supreme Court expressly

overrules it." The district court therefore found itself "hamstrung," and bound to impose the mandatory minimum sentence.

The district court grouped Counts 1 and 2, and set Nagy's base offense level at 24. The court adjusted Nagy's base offense level for prior convictions for violent felonies, and for the fact that the gun in Nagy's possession was stolen, and determined Nagy's offense level to be 33, with a Criminal Category of VI. After considering Nagy's extremely troubled childhood, the district court rejected the government's request to sentence Nagy within the advisory Guideline range of 235 to 293 months, noting that "the sentencing range in this case is so completely out of whack with community sentiment." Instead, the court sentenced Nagy to the mandatory minimum sentence of 180 months' imprisonment under § 924(e), and to a concurrent 60 months on the other count. The judge stated that he had "expressed perhaps ad nauseam the fact that this is not a just punishment. It is nowhere close to a just punishment. It should never have been indicted this way, and the United States Attorney's Office should have never brought the case in this fashion."

On appeal, Nagy argues that his Sixth Amendment rights were violated because the government did not prove his convictions to a jury beyond a reasonable doubt, which he contends is required under *Alleyne*. In addition, he argues that the national consensus and evolving standards of decency require this court to find unconstitutional Nagy's sentence under 18 U.S.C. § 924(e).

The district court correctly sentenced Nagy to 180 months' imprisonment, as required under the ACCA. Contrary to Nagy's assertion, *Alleyne* does not stand for the proposition that a defendant's prior convictions must be submitted to a jury and proven beyond a reasonable doubt, even when the fact of those convictions increases the mandatory minimum sentence for a crime. *Alleyne* overruled the distinction that the Court drew in *Harris v. United States*, 536 U.S. 545 (2002), between facts that increase the statutory maximum and facts that increase only the mandatory minimum. The Court in *Alleyne* concluded that such a distinction is "inconsistent with *Apprendi*['s]" requirement that any fact, "other than the fact of a prior conviction," *Apprendi*, 530 U.S. at 490, that increases the penalty for a crime beyond the statutory maximum be submitted to a jury and proven beyond a reasonable doubt. *Alleyne*, 133 S. Ct. at 2163.

*Apprendi*, therefore, preserved the Court's earlier ruling in *Almendarez-Torres* that a prior conviction is not "an element of the related crime" that must be submitted to a jury and proven beyond a reasonable doubt. *Almendarez-Torres*, 523 U.S. at 246–47. *Alleyne* states that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury"; but the Court in *Alleyne* explicitly declined to overrule *Almendarez-Torres*' "narrow exception to this general rule for the fact of a prior conviction." *Alleyne*, 133 S. Ct. at 2155, 2160 n.1.

Nagy frames "the seminal question" in his case as, "is <u>Almendarez-Torres</u> still good law based on the Supreme Court cases over the last fifteen years[?]" The most recent of those precedents, *Alleyne*, leaves no doubt that it is. Our own precedent compels the same conclusion: "*Almendarez-Torres* is still good law and will remain so until the Supreme Court explicitly overrules it." *United States v. Anderson*, 695 F.3d 390, 398 (6th Cir. 2012). Nagy's contention that the holding in *Almendarez-Torres* has been "whittled away," and that "<u>Almendarez-Torres</u> has been overruled by implication," and is "no longer good law," is unavailing. "Although *Almendarez-Torres* may stand on shifting sands, the case presently remains good law and we must follow it until the Supreme Court expressly overrules it." *United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013). More recently, in *United States v. Pritchett*, 749 F.3d 417, 434 (6th Cir. 2014), we again made clear that *Almendarez-Torres* has not been overruled: "*Alleyne* did not disturb the holding in *Almendarez-Torres*." Accordingly, Nagy's Sixth Amendment rights were not violated because the government was not required to submit Nagy's prior convictions to the jury.

The 180-month mandatory minimum sentence that Nagy received pursuant to the ACCA does not violate his Eighth Amendment right to be free from cruel and unusual punishment. Nagy argues that his sentence is unconstitutional because of: 1) the community sentiment as expressed by policymakers; 2) the facts of Nagy's offense; 3) Nagy's terrible childhood history; and 4) the community sentiment expressed by the jurors at Nagy's trial. Nagy's arguments are foreclosed by this court's precedent. In *Moore*, we addressed a defendant's claim that the ACCA's mandatory minimum penalty of 180 months' imprisonment for being a felon in possession of a firearm violated that defendant's Eighth Amendment rights. We held that it did not:

Fifteen years is by any measure a considerable amount of time. But while "[s]evere mandatory penalties may be cruel, . . . they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Harmelin*, 501 U.S. at 994–95, 111 S. Ct. 2680. In general, Eighth Amendment jurisprudence grants "substantial deference" to the legislatures who determine the types and limits of punishments. *Id*. at 999, 111 S. Ct. 2680 (Kennedy, J., concurring). It is settled that legislatures may define criminal punishments without giving courts sentencing discretion. *Id*. at 1006, 111 S. Ct. 2680 (citing *Chapman v. United States*, 500 U.S. 453, 467, 111 S. Ct. 1919, 114 L.Ed.2d 524 (1991). In fact, this Court has previously held that the very punishment Moore received—fifteen years under the Armed Career Criminal Act—withstands Eighth Amendment review as applied to the facts of those cases. *United States v. Warren*, 973 F.2d 1304, 1311 (6th Cir. 1992); *United States v. Pedigo*, 879 F.3d 1315, 1320 (6th Cir. 1989). Other courts of appeals have reached the same conclusion. *See, e.g.*, *United States v. Cardoza*, 129 F.3d 6, 18 (1st Cir. 1997); *United States v. Presley*, 52 F.3d 64, 68 (4th Cir. 1995); *United States v. Hayes*, 919 F.2d 1262, 1266 (7th Cir. 1990); *United States v. Baker*, 850 F.2d 1365, 1372 (9th Cir. 1988); *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000). And we are aware of no court of appeals decision that has struck down the Armed Career Criminal Act as violative of the Eighth Amendment.

*Moore*, 643 F.3d at 456. We addressed the same issue in *United States v. Brown*, 443 F. App'x 956, 960 (6th Cir. 2011), and again determined that imposition of the ACCA's mandatory minimum sentence does not violate an individual's Eighth Amendment rights:

Brown argues that ACCA's mandatory minimum as applied to him violates his Fifth Amendment right to due process and equal protection and his Eighth Amendment right to be spared cruel and unusual punishment. We have seen this movie before, and each time it ends badly for the defendant. *See, e.g.*, *United States v. Moore*, 643 F.3d 451, 456 (6th Cir. 2011); *United States v. Jones*, 52 Fed. App'x. 244, 247 (6th Cir. 2002); *United States v. Warren*, 973 F.2d 1304, 1311 (6th Cir. 1992). All for good reason: "Congress has the power to define criminal punishments without giving the courts any sentencing discretion," *Chapman v. United States*, 500 U.S. 453, 467, 111 S. Ct. 1919, 114 L.Ed.2d 524 (1991), and mandatory prison sentences are not cruel and unusual, *Harmelin v. Michigan*, 501 U.S. 957, 995–96, 111 S. Ct. 2680, 115 L.Ed.2d 836 (1991). In the teeth of these precedents Brown has not identified, nor have we found, any decision from any court invalidating the application of ACCA's mandatory minimum to an individual on constitutional grounds. Brown gives no good reason for making this case the first.

Nagy's reliance on Attorney General Eric Holder's memorandum on "Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug

Cases" is misplaced. That memorandum addresses "certain drug cases," not firearms cases, like Nagy's. Furthermore, the memorandum is a guidepost for Department of Justice prosecutors in exercising prosecutorial discretion. It does not address the validity of mandatory minimum sentences under the ACCA, and it expressly states that, "The policy set forth herein is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding. *See United States v. Caceres*, 440 U.S. 741 (1979)."

There is no doubt that Nagy's troubled childhood and difficult circumstances contributed to the situation in which he now finds himself. The district court judge took that fact into account when he granted Nagy a downward variance in his sentence. But as we stated in *Brown*, Congress has the authority to limit the courts' sentencing discretion, and mandatory minimum sentences are not cruel and unusual.

The striking and troubling harshness of the sentence in this case is a result of the statutory mandatory minimum constitutionally imposed by Congress. This case is but a particularly clear example of our sometimes difficult duty to apply the policy choices of Congress, rather than our own.

The judgment of the district court is AFFIRMED.