The court delivered a PER CURIAM opinion. STRANCH, J. (pp. 630-34), delivered a separate concurring opinion.
OPINION
PER CURIAM.
Edward Young received a mandatory fifteen-year prison sentence for the crime of possessing seven shotgun shells in a drawer. He came into possession of the shells while helping a neighbor sell her late husband’s possessions. When he eventually discovered them, he did not realize that his legal disability against possessing firearms — resulting from felonies committed some twenty years earlier — extended to ammunition. See 18 U.S.C. § 922(g)(1). Under the Armed Career Criminal Act (ACCA), Young received a mandatory fifteen-year sentence.
Young now asks this court to conclude that the ACCA, as applied to him, is unconstitutional under the Eighth Amendment because the gravity of his offense is so low as compared to the harshness of his sentence, and unconstitutional under the Fifth Amendment because he lacked notice. Our precedent compels us to reject these claims and to affirm Young’s sentence.
I. BACKGROUND
In 2010 or 2011, Edward Young helped a neighbor sort and sell her late husband’s possessions. When he discovered a box of seven shotgun shells in the collection, he stored the shells in a drawer where they would be safe from his four children. Because Young had previously been convicted of a number of felonies, all burglary-related offenses between 1990 and 1992, it was a crime for him to possess ammunition. 18 U.S.C. § 922(g)(1). He was unaware of this legal disability.
Police officers later showed up on Young’s doorstep investigating recent burglaries at an auto repair shop and a storage building. During the consent search, officers found several items reported stolen, though it is unclear whether the items were associated with the recent burglaries. They also found the box of seven shotgun shells in a drawer, which Young readily admitted to possessing.
The government charged Young with a single count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). The statute carries a fifteen-year mandatory minimum sentence for anyone who, like Young, has at least three prior felony convictions. 18 U.S.C. § 924(e)(1).[1]
*624 Young pleaded guilty to being a felon in possession of ammunition and mounted a constitutional challenge at sentencing. According to him, a fifteen-year ACCA mandatory minimum sentence, as applied to him, would violate the Eighth Amendment because it is grossly disproportionate to the offense he committed, an offense of very low culpability or risk of harm. For support, he argued that his advisory Guidelines range, absent the ACCA and associated armed career criminal guideline, would have been only 10-16 months. He also argued that the ACCA, as applied to him, would violate the Fifth Amendment Due Process Clause because he did not have fair notice of the prohibition against felons possessing ammunition.
The district court expressed concern about the fairness of the punishment but determined that it had no discretion in sentencing. Young received the mandatory fifteen-year sentence, and now appeals.
II. ANALYSIS
We review these constitutional challenges to Young’s sentence de novo. United States v. Moore, 643 F.3d 451, 454 (6th Cir.2011).
A. Eighth Amendment
Young argues that the ACCA, as applied to him, violates the Eighth Amendment because it imposes on him a harsh sentence — -one normally reserved for far more dangerous criminals — for possessing seven shotgun shells in a drawer, a crime he describes as a mere technical violation of the statute. Comparing his crime to overtime parking, which could not constitutionally be punishable by life imprisonment, see Rummel v. Estelle, 445 U.S. 263, 288, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), he argues that a mandatory fifteen years is grossly disproportionate under the circumstances.
The government asks that we simply defer to the legislative mandate in the ACCA, which plainly sweeps Young’s possession of shotgun shells into the same punishment category as the possession of bombs, missiles, or automatic weapons. See 18 U.S.C. §§ 921(a)(3)-(4), 922(g)(1), 924(e)(1). It is true that substantial deference is due to legislative sentencing schemes. Ewing v. California, 538 U.S. 11, 30, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (noting that “rational legislative judgments] [are] entitled to deference”); Harmelin v. Michigan, 501 U.S. 957, 998-99, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (discussing the “primacy of the legislature” in making penological judgments); Solem v. Helm, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (“Reviewing courts ... should grant substantial deference to the broad authority that legislatures necessarily possess ... in sentencing convicted criminals.”). Amicus counsel suggests that because these cases all involved a review of state sentences, and because the framers originally intended to limit the actions of Congress and not the states, less deference is due to Congress than to state legislatures. See generally Michael J. Zydney Mannheimer, Cruel and Unusual Federal Punishments, 98 Iowa L.Rev. 69, 69-131 (2012) (arguing that federal sen *625 tences should be reviewed by comparing them to state sentences rather than giving them the same deference given to states out of federalism concerns); John F. Stinneford, Rethinking Proportionality Under the Cruel and Unusual Punishments Clause, 97 Va. L.Rev. 899, 943-44 (2011) (explaining that the Bill of Rights was adopted to require the new federal government to recognize the fundamental common law rights of citizens, particularly relating to criminal rights). Cf. Robinson v. California, 370 U.S. 660, 666, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (applying the Eighth Amendment to the states for the first time, through the Due Process Clause of the Fourteenth Amendment); Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 462, 67 S.Ct. 374, 91 L.Ed. 422 (1947) (assuming without deciding that the Eighth Amendment is applicable to the states through the Fourteenth Amendment). Whether amicus counsel is correct as to the amount of deference owed to Congress as compared to the states, it is correct that Congressional intent is not the end of the analysis of a constitutional claim. See, e.g., Rummel, 445 U.S. at 284, 100 S.Ct. 1133 (“Texas is entitled to make its own judgments as to [criminal sentencing],” subject to the strictures of the Eighth Amendment). A legislative mandate does not trump the Constitution.
To determine whether a non-capital sentence falls outside the bounds of the Eighth Amendment’s “evolving standards of decency,” Graham v. Florida, 560 U.S. 48, 58, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (internal quotation marks omitted), this court is instructed to use what has become known as the “narrow proportionality principle,” id. at 59-60, 130 S.Ct. 2011 (internal quotation marks omitted). Under this principle, “ ‘punishment for crime should be graduated and proportioned to [the] offense,’ ” id. at 59, 130 S.Ct. 2011 (quoting Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910)), but the proportionality required “ ‘forbids only extreme sentences that are “grossly disproportionate” to the crime,’ ” id. at 60, 130 S.Ct. 2011 (quoting Harmelin, 501 U.S. at 997, 1000-01, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment)).
The test is rarely met. Cf. Ewing, 538 U.S. at 22, 123 S.Ct. 1179 (“[Successful challenges to the proportionality of particular sentences should be exceedingly rare.” (internal quotation marks omitted)). The Supreme Court has overturned only a small number of non-capital sentences on Eighth Amendment grounds. In 1910, the Court struck down a sentence of twelve years’ imprisonment, in chains and at hard and painful labor, for falsifying a public document. Weems, 217 U.S. at 357, 365-67, 381, 30 S.Ct. 544. The Court considered the punishment degrading and harsh as compared to an offense that could be committed “though he gain nothing and injure nobody.” Id. at 365-66, 30 S.Ct. 544. Not until over seventy years later did the Court hold unconstitutional another sentence: life without parole for passing a $100 bad check based on the defendant’s multiple prior convictions. Solem, 463 U.S. at 296-97, 303, 103 S.Ct. 3001. The Court observed that the sentence, generally reserved for far more serious offenses, was grossly disproportionate to the crime, “one of the most passive felonies a person could commit,” involving no violence or threat of violence. Id. at 296-99, 303, 103 S.Ct. 3001 (internal quotation marks omitted). In reaching this decision, the Court noted that the defendant’s previous offenses triggering the state recidivism rule, including burglary, were also non-violent and minor in nature. Id. at 296-97, 103 S.Ct. 3001. Finally, the Court has held that life without parole for juvenile non- *626 homicide offenses is categorically grossly disproportionate. Graham, 560 U.S. at 74, 130 S.Ct. 2011.
While this court has considered as-applied Eighth Amendment challenges to the ACCA mandatory minimum a number of times — mostly in cases involving the possession of firearms — we have never found sufficient disproportionality in these cases. See, e.g., United States v. Banks, 679 F.3d 505, 506, 507-08 (6th Cir.2012) (rejecting categorical claim that ACCA fifteen-year minimum sentence for being a felon in possession of a firearm was unconstitutional where the defendant committed the pri- or offenses as a minor); Moore, 643 F.3d at 454-55 (rejecting an Eighth Amendment challenge to the ACCA minimum because the defendant’s prior offenses were violent crimes and because he was seen with a gun while beating his girlfriend on the night of the arrest); United States v. Johnson, 22 F.3d 674, 677, 682-83 (6th Cir.1994) (rejecting challenge to fifteen-year ACCA sentence for being a felon in possession of a firearm and ammunition); United States v. Warren, 973 F.2d 1304, 1305-06, 1311 (6th Cir.1992) (holding that the fifteen-year sentence was not grossly disproportionate to the offense of being a felon in possession of a firearm). In an unpublished case, this court has also rejected, without proportionality review, an as-applied challenge where the defendant was convicted under the ACCA solely for possessing ammunition. United States v. Walker, 506 Fed.Appx. 482, 489-90 (6th Cir.2012). There, the defendant had been convicted for possessing thirteen 9 mm rounds of ammunition, the ammunition was discovered during a drug-related investigation, and he was simultaneously prosecuted on state drug charges. Id. at 483.
The government suggests that because this court has never concluded that a particular application of the ACCA mandatory minimum violated the Eighth Amendment, this court is bound to reach the same result. That is not necessarily so. A defendant’s particular circumstances are relevant to an as-applied Eighth Amendment claim and could render a sentence unconstitutional. Graham, 560 U.S. at 59, 130 S.Ct. 2011 (“[T]he Court considers all of the circumstances of the case to determine whether [a term-of-years] sentence is unconstitutionally excessive.”); see also Solem, 463 U.S. at 291-94, 103 S.Ct. 3001 (discussing the fact-specific, objective factors to be considered in an Eighth Amendment proportionality analysis); Moore, 643 F.3d at 454-55 (engaging in fact-specific proportionality review despite this court’s prior holding that mental disability did not categorically render a mandatory sentence unconstitutional). “[N]o penalty is per se constitutional.... [A] single day in prison may be unconstitutional in some circumstances.” Solem, 463 U.S. at 290, 103 S.Ct. 3001 (internal citation omitted).
The Supreme Court has identified three “objective criteria” for assessing proportionality: the gravity of the offense as compared to the harshness of the penalty; the sentences imposed on others in the same jurisdiction; and the sentences imposed for the same offense in other jurisdictions. Solem, 463 U.S. at 292, 103 S.Ct. 3001. But, in most cases, a gravity-versus-harshness analysis will answer the question; only if we reach an initial inference of gross disproportionality must we consider the other criteria. Harmelin, 501 U.S. at 1004-05, 111 S.Ct. 2680; Graham, 560 U.S. at 60, 130 S.Ct. 2011. The gravity of an offense depends heavily on the nature and circumstances of a particular case, including the harm or risk of harm, magnitude of the crime, degree of culpability, motive, and any other facts specific to the *627 offense. Solem, 463 U.S. at 291, 293-94, 103 S.Ct. 3001.
The harm caused, and even the risk of harm caused, was extremely low in Young’s case. Indeed, under the facts as they were found by the district court, we cannot say that there was any risk of harm or violence inherent in Young’s crime. See Begay v. United States, 553 U.S. 137, 146, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008) (noting that the ACCA was designed to punish the special danger created when those most likely to pull the trigger possess a gun). Young possessed seven shotgun shells in a drawer, a crime that involved no violence and was committed “though he gain[ed] nothing and injured nobody.” See Weems, 217 U.S. at 365, 30 S.Ct. 544. He owned no compatible gun, and there is no evidence that he intended to use the shells in a crime, had ever used any weapon in any crime, or would provide the shells to someone who would use them in a crime. Cf. Moore, 643 F.3d at 455 (rejecting Eighth Amendment challenge, in part, because the defendant possessed a gun while beating his girlfriend). Young says that he intended to return the shells to the widowed neighbor, and no one has accused the widow of being a violent or dangerous criminal.
The magnitude of Young’s crime was low, as was his culpability and motive. On the well-accepted scale of criminal culpability, ranging from negligent and reckless acts to malicious acts, Young’s act of innocently acquiring and knowingly continuing to possess ammunition entails the lowest level of culpability that could have rendered him guilty of the crime. See United States v. McCormick, 517 Fed.Appx. 411, 414 (6th Cir.2013) (“Section 924(a)(2) ... requires that any violation of section 922(g)(1) be ‘knowing.’ ”); see also Solem, 463 U.S. at 293, 103 S.Ct. 3001. He acquired the shotgun shells passively, he kept them without any criminal motive, and his knowledge extended only to his possession and not to its illegality.[2]
Young’s Achilles heel, however, is his recidivism. As the Supreme Court recognized in Ewing, legislatures are permitted to impose more severe penalties on those who have not been deterred from criminal behavior by traditional punishments. 538 U.S. at 24-28, 123 S.Ct. 1179. In such cases, “we must place on the scales not only [the defendant’s] current felony, but also his long history of felony recidivism.” Id. at 29, 123 S.Ct. 1179. In other words, the gravity of the present offense is viewed in light of the defendant’s previous offenses. Id. For example, in Ewing, the defendant had previously been convicted of numerous felonies and misdemeanors, including robbery and residential burglaries; had committed many offenses while on probation for previous ones; and had served nine terms of imprisonment. Id. at 30, 123 S.Ct. 1179. This rendered the present offense of stealing $1,200 worth of merchandise sufficiently grave to warrant a sentence of 25 years to life under California’s three-strikes law. Id. at 28, 30, 123 S.Ct. 1179; see also Moore, 643 F.3d at 455 (considering defendant’s prior offenses of aggravated burglary and distribution of crack cocaine in gravity analysis of firearm possession offense). Of course, recidivism does not render any sentence constitutional; the offense still must be sufficiently grave in combination with the recidivism. See Solem, 463 U.S. at 279-80, 296-97, 303, 103 S.Ct. 3001 (striking down *628 a life sentence without the possibility of parole for felony of passing a bad check after committing six previous “relatively minor” felonies, including burglary).
Young’s recidivism, resulting from numerous felony convictions roughly twenty years prior to his present offense, increases the gravity of his offense under Ewing and Solem. These prior triggering offenses include four counts of burglary and seven counts of aggravated burglary. See Tenn.Code. Ann. § 39-14-403. At least some of these crimes involved theft of weapons and ammunition. These prior felonies were serious enough to qualify as violent felonies under the ACCA. See 18 U.S.C. § 924(e)(2)(B)(ii). On the other hand, these offenses occurred long ago, with Young’s most recent release from prison in 1996. In the meantime, his only conviction for any crime was misdemeanor assault in 2005, for which he spent no time in jail. But the remoteness is offset somewhat by the offense conduct listed in the PSR. We make no findings as to whether Young actually committed new burglaries in 2011, but it is relevant that the ammunition was found during a search for stolen tools and that several stolen items were found in Young’s house.
Having reviewed the gravity of Young’s offense, the court must now compare it to the length and other terms of the sentence, generally assuming that a longer sentence is harsher, to determine whether the sentence is grossly disproportionate. Solem, 463 U.S. at 294-95, 103 S.Ct. 3001. There can be no question that a fifteen-year mandatory minimum sentence is harsh and severe. See Moore, 643 F.3d at 456 (“Fifteen years is by any measure a considerable amount of time.”). Courts have found shorter sentences unconstitutional, but only in certain circumstances. For non-recidivist offenders, a twelve-year sentence in chains and hard labor was too harsh for falsifying public documents, Weems, 217 U.S. at 365-67, 382, 30 S.Ct. 544, but a mandatory life sentence was not too harsh for possessing a large amount of cocaine because the crime posed a serious health risk to society. Harmelin, 501 U.S. at 1002-03, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment). For recidivist offenders, the line is different. A life sentence is too harsh for a recidivist felon who passed a bad check. Solem, 463 U.S. at 296, 303, 103 S.Ct. 3001. But a twenty-five-year sentence is not too harsh for a recidivist felon who stole $1,200 worth of merchandise, Ewing, 538 U.S. at 28-31, 123 S.Ct. 1179, and a fifteen-year sentence is not too harsh for a recidivist felon who possessed a firearm while beating his girlfriend, Moore, 643 F.3d at 455-56. While Young’s fifteen-year sentence may be disproportionate to his offense in the abstract, our understanding of this precedent compels us to conclude that it is not grossly disproportionate when taking his recidivism into account.
Because Young’s sentence is not grossly disproportionate to his crime under Ewing and Solem, we must ultimately reject his Eighth Amendment claim. See, e.g., United States v. Nagy, No. 13-4151, 760 F.3d 485, 490, 2014 WL 3632362, at *5 (6th Cir. July 24, 2014) (“The striking and troublesome harshness [of a fifteen-year sentence for felon in possession of a firearm] ... is but a particularly clear example of our sometimes difficult duty to apply the policy choices of Congress, rather than our own.”).
B. Fifth Amendment
Because he lacked notice of the § 922(g)(1) bar against possession of ammunition by felons, Young claims that the ACCA is unconstitutional as applied to him under the Fifth Amendment rule that all *629 citizens are entitled to be informed of what conduct the law prohibits. See Papachris-tou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).
According to Young, notice cannot properly be imputed to him because felons and the general public lack knowledge of the ammunition prohibition. As evidence, he argues that generic judgment forms and plea colloquies notify new felons of the legal prohibition against possession of firearms but not ammunition. His judgment in the present case, for example, specifies that he “shall not possess a firearm, destructive device, or any other dangerous weapon” but makes no mention of ammunition. While sentencing him, the district court below repeated the same prohibition, as many district courts do, with no mention of the prohibition against ammunition.
Young also argues that notice cannot be imputed to him because he did not have specific intent to commit a criminal act. He refers to § 922(g) as a “strict liability offense” because the knowledge element extends to possession but not to the illegality of possession. See, e.g., Bryan v. United States, 524 U.S. 184, 187-88, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (explaining that Congress added a “scienter requirement” for most unlawful acts under § 922); McCormick, 517 Fed.Appx. at 414 (“Section 924(a)(2) ... requires that any violation of section 922(g)(1) be ‘knowing’ ” but the knowledge requirement does not extend to the illegality of possession); United States v. Davis, 27 Fed.Appx. 592, 599-600 (6th Cir.2001) (suggesting that the knowledge requirement refers to the element of possession, not to the legal disability).
Young’s suggestion that general knowledge and specific criminal intent are necessary to impute notice to a criminal defendant is based on a misreading of case law. In Papachristou, one of Young’s primary sources, the Supreme Court held that a vagrancy statute was unconstitutional as applied to specific individuals because the defendants were not likely to be alerted to the regulation because they did not have specific intent to commit unlawful acts, and because the ordinance was written in such an archaic manner that few would understand it. 405 U.S. at 162-63, 92 S.Ct. 839. In other words, specific intent to commit a criminal act or actual knowledge can suffice for notice where the statute is unclear. See, e.g., United States v. Caseer, 399 F.3d 828, 839 (6th Cir.2005) (“[T]he requirement of specific intent in this case mitigates any constitutional infirmity resulting from the vagueness of the [statute].”); United States v. Baker, 197 F.3d 211, 219 (6th Cir.1999) (holding that even if the § 922(g)(8) firearms prohibition is obscure and vague, there was no notice violation because the defendant received adequate warning on his domestic violence protection orders). But unless the statute is so vague, technical, or obscure “that it threatens to ensnare individuals engaged in apparently innocent conduct,” we apply the “centuries-old maxim that ‘ignorance of the law is no excuse’ ” and presume notice despite a defendant’s ignorance-in-fact. Id. at 218-19; see also Papachristou, 405 U.S. at 162-63, 92 S.Ct. 839; United States v. Haire, 89 Fed.Appx. 551, 555-56 (6th Cir.2004) (applying the presumption of notice to a felon convicted under Colorado’s prohibition against possession of firearms); United States v. Napier, 233 F.3d 394, 397-99 (6th Cir.2000) (holding that language in § 922(g)(8) gives sufficient notice of the prohibition against the possession' of firearms by those subject to a domestic violence order); United States v. Giles, 640 F.2d 621, 627-29 (5th Cir. Unit A March 1981) (rejecting claim that firearms conviction was unconstitutional due to de *630 fendant’s ignorance of the law because § 922(h) is clear on its face).
Young may have believed that his possession was innocent conduct, but he does not argue that the ACCA is too technical or obscure to impart legal notice had he read it. Nor could he, as the language in § 922(g) plainly states that “[i]t shall be unlawful for any person — (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... [to] possess ... any firearm or ammunition.” It would be preferable for both state and federal courts to expressly inform felons of their legal disability; where a statute specifically targets a subclass of citizens, those citizens may be unlikely to learn of the prohibition from others. Cf. Caseer, 399 F.3d at 836 (keeping in mind “the common sense judgment that people do not review copies of every law passed.” (internal quotation marks omitted)). Nonetheless, the Fifth Amendment notice requirement is satisfied by the statute, and we must reject Young’s Fifth Amendment claim.
III. CONCLUSION
In conclusion, based on our binding precedent, we affirm Young’s fifteen-year sentence.

. Tennessee authorities also hied state charges against Young for burglary, theft, vandalism, and contributing to the delinquency of a minor for events related to the burglary investigation. These charges were pending in 2013 when Young was sentenced, but the government informs us that the charges were dismissed. The government asks us to consider facts related to the state charges, including Young’s alleged guilt and an alleged confession. This information is not in the record, the district court made no findings as to whether Young committed the offenses or confessed to them, and an unsupported state *624 ment by a prosecutor is not a record fact. As such, we will not consider the allegations. See United States v. Black, 482 F.3d 1035, 1041 (9th Cir.2007) (noting that "[a]ppellate courts generally will not consider facts outside the record developed before the district court” unless the fact is a proceeding in another court appropriate for judicial notice (internal quotation marks omitted)). Nor will we consider the government’s contention that state authorities asked it to prosecute Young because this is also not in the record.

. Young argues that his lack of knowledge of illegality renders his crime under § 922(g)(1) one of strict liability. We discuss this characterization in more detail under the Fifth Amendment analysis, but it is beside the point for the Eighth Amendment analysis because we agree that Young's culpability was low.