NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1049n.06

No. 09-2091

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Oct 05, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PABLO BONILLA, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| BLAINE LAFLER, Warden, | ) | O P I N I O N |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: MERRITT, McKEAGUE, and STRANCH, Circuit Judges.

**McKEAGUE, Circuit Judge.**

Petitioner-appellant Pablo Bonilla appeals the district court's denial of his petition for a writ of habeas corpus. Bonilla argues that his life sentence with the possibility of parole violates the Eighth Amendment's prohibition against cruel and unusual punishment. More specifically, he argues that his sentence violates the gross disproportionality principle of the Eighth Amendment. The district court found that Bonilla's claim was barred by *Harmelin v. Michigan*, 501 U.S. 957 (1991). Bonilla appeals this decision. We agree with the district court and affirm.

**I. BACKGROUND**

On February 7, 2002, Pablo Bonilla was arrested in Pontiac, Michigan, after 917 grams of cocaine were found inside his vehicle. Subsequently, Bonilla was charged in Michigan court with

one count of possessing with intent to deliver more than 650 grams of a mixture containing cocaine in violation of M.C.L. § 333.7401(2)(a)(i) (2001) and one count of possessing metallic knuckles in violation of M.C.L. § 750.224. At the conclusion of the trial, the prosecution requested a lesser-included instruction for the crime of simple possession of 650 or more grams of cocaine. The judge acquiesced, giving this instruction in addition to the principal charge. The jury returned a guilty verdict for simple possession.

The Michigan sentencing scheme suffered from an inconsistency at the time of Bonilla's arrest. On the date of Bonilla's arrest, possession of more than 650 grams of cocaine was punishable by a sentence of mandatory life with the possibility of parole. M.C.L. § 333.7403(2)(a)(i) (2001). On the same date, a defendant convicted of possession with intent to distribute more than 650 grams of cocaine faced a sentence of 20 years to life. M.C.L. § 333.7401(2)(a)(i) (2001). After his arrest, an amendment to the simple possession statute became effective on March 1, 2003. Under the amended simple possession sentencing scheme, Bonilla would have faced a maximum term of 30 years, with no mandatory minimum term prescribed. M.C.L. § 333.7401(2)(a)(i) (2003). The trial court sentenced Bonilla under the version of the Michigan possession statue in effect on the date of his arrest. He was sentenced to life in prison with the possibility of parole.[1]

Bonilla appealed his conviction to the Michigan Court of Appeals on numerous grounds, including the disproportionate nature of his sentence. In his brief, the only mention of the Eighth

---

[1]Bonilla argues that he will serve more time for simple possession than for possession with intent to distribute. However, this argument is pure conjecture. Bonilla will be eligible for parole after serving 15 years. M.C.L. § 791.234(7)(a). This will make him eligible for parole on April 5, 2019.

- 2 -

No. 09-2091
*Bonilla v. Lafler, Warden*

Amendment occurred in the sixth question presented and the heading to the section addressing this question. Only one citation, *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990), squarely addressed the issue of proportionality. Bonilla claimed that the inconsistencies resulting from the failure to amend some, but not all, of the Michigan sentencing scheme did not comport with *Milbourn*. He further contended that the result—a lesser-included offense being punished more severely than the greater offense—was arbitrary and capricious. The majority of his argument then focused on a claim that he should have been sentenced under the amended sentencing scheme.

On January 17, 2006, the Michigan Court of Appeals affirmed Bonilla's sentence. The court first stated, "We reject defendant's final claim that his life sentence imposed under the former version of MCL 333.7403, constitutes cruel and unusual punishment." (R. 12-17, Ct. App. Op. at 9, Page ID # 333.) The court then addressed his proportionality challenge by focusing on Michigan law that prohibits application of an amended sentencing statute to an offense occurring before the statute's effective date. In a footnote the court added:

> Defendant suggests that his parolable life sentence constitutes cruel and unusual punishment. Although [the Michigan] Supreme Court has held that imposition of a mandatory sentence of life imprisonment without the possibility of parole for a conviction of simple possession of 650 or more grams of a controlled substance constitutes cruel or unusual punishment, defendant has not cited any support for his claim that a parolable life term of imprisonment constitutes cruel and usual [sic] punishment.

(R. 12-17, Ct. App. Op. at 10, Page ID # 334.) The court continued, "'An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority.'" (*Id.* (alteration in original) (quoting *People v. Watson*, 629 N.W.2d 411, 421-22 (2001)).)

Bonilla petitioned the Michigan Supreme Court for leave to appeal, which was denied.

Bonilla next petitioned the United States District Court for the Eastern District of Michigan for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In a report and recommendation, the magistrate judge concluded that Bonilla's petition was foreclosed by Supreme Court precedent. The district judge agreed, adopting the magistrate's recommendation and denying the petition. We granted Bonilla's motion for a certificate of appealability on the issue of whether his sentence was arbitrary and disproportionate.

## II. ANALYSIS

Initially, Lafler contends that Bonilla procedurally defaulted his Eighth Amendment claim. Bonilla contends that Lafler waived the procedural default argument, or in the alternative, that his Eighth Amendment claim is not defaulted. A party may waive a procedural default defense by failing to assert it. *Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir. 2006). Because Lafler failed to raise his procedural default defense in his initial appellate brief and because the argument was not made before the district court, we refrain from reaching this issue.

In habeas proceedings, we review de novo a district court's legal conclusions and determinations of mixed questions of law and fact. *Gall v. Scroggy*, 603 F.3d 346, 351 (6th Cir. 2010). We review a district court's findings of fact for clear error. *Titlow v. Burt*, 680 F.3d 577, 585-86 (6th Cir. 2012).

Generally, a state-court decision under review is entitled to deference pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28 U.S.C. § 2254(d). That subsection provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Bonilla argues that the state court did not reach the merits of his claim and that he is therefore entitled to de novo review. In the alternative, he states that subsection (1) applies to this case.

When a state court fails to reach the merits of a federal constitutional claim or claims, this court does not afford the state court AEDPA deference. *Henley v. Bell*, 487 F.3d 379, 390 (6th Cir. 2007). In these instances, the court employs de novo review to determine whether the state court decision was contrary to Supreme Court precedent. *Id.*

The Supreme Court's decision in *Harrington v. Richter*, 131 S. Ct. 770 (2011), guides our analysis of whether a state court reached the merits of a claim. The Court held that AEDPA deference is appropriate when courts summarily deny a habeas petitioner's claim. *Id.* at 784. In these cases, federal courts will presume the state court decided the case on the merits "in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. A petitioner may overcome the presumption "when there is reason to think some other explanation for the lower court's decision is more likely." *Id.* at 785.

Bonilla cannot make this showing. The Michigan Court of Appeals summarily rejected Bonilla's claim in the text of its opinion. The subsequent discussion cited only to state court decisions. But the Michigan Court of Appeals cannot be faulted for this, for Bonilla only cited Michigan law in his brief. Though the footnote that followed rejected Bonilla's claim on procedural grounds, this would either be deemed an alternative ruling for rejecting his constitutional claim on its merits or be deemed to procedurally bar Bonilla's constitutional claim.[2] Bonilla has not presented sufficient evidence to overcome the presumption that the Michigan Court of Appeals adjudicated his constitutional claim on the merits.

Therefore, AEDPA deference is appropriate. To obtain relief, Bonilla must show that the state court decision was either contrary to, or an unreasonable application of, clearly established federal law. In determining what constitutes "clearly established Federal law," we only look to the holdings of Supreme Court decisions at the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

Courts consider a state court decision "contrary to" clearly established federal law under § 2254(d)(1) if the two decisions are "diametrically different, opposite in character or nature, or mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (quoting *Webster's Third New International Dictionary* 495 (1976)) (internal quotation marks omitted). The court will only grant

---

[2]In his principal brief, Bonilla cites AEDPA deference as the appropriate standard of review. In his reply brief, he argues that the Michigan Court of Appeals did not reach the merits of his constitutional claim, and therefore, he is entitled to de novo review. It would be incongruous to employ de novo review when a state court failed to reach the merits of a decision because an appellant failed to adequately argue it, and thereby abandoned it. In *Watson*, the Michigan Court of Appeals stated that claims not developed are considered abandoned. *Watson*, 629 N.W.2d at 422.

habeas relief when the state court arrived at a conclusion opposite to that of the Supreme Court on a question of law or if the state court decided the case differently than the Supreme Court has decided a case on a set of materially indistinguishable facts. *Id.*; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005).

Alternatively, courts consider a state court decision an "unreasonable application" of clearly established federal law when the state court decision was objectively unreasonable, not just incorrect or erroneous. *Lockyer*, 538 U.S. at 75.

Therefore, not every constitutional error in a state-court proceeding merits the issuance of a writ of habeas corpus, only those that "undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ." *Williams*, 529 U.S. at 375.

Bonilla cannot overcome the burden established by AEDPA. Though Supreme Court precedent clearly recognizes a concept of gross disproportionality in sentencing, the contours of that right are far from clear. Indeed, the Supreme Court stated in *Lockyer* that "precedents in this area have not been a model of clarity" and that this area of law is a "thicket." 538 U.S. at 72. Therefore, Bonilla faces an uphill battle in arguing there is any clearly established federal law as determined by the Supreme Court in this area of the law. It is important to note, moreover, that the Supreme Court has never struck down a sentence as grossly disproportionate when the sentence was life with the possibility of parole.

In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court held that the Eighth Amendment recognizes a narrow gross disproportionality principle in sentencing. On direct appeal the Court upheld a life sentence without the possibility of parole. *Id.* at 961. The defendant, like Bonilla, was

convicted of possession of a controlled substance under a version of the same statute now under review.[3] *Id.* The fractured opinion of the *Harmelin* court recognized that the Eighth Amendment protects against gross disproportionality in sentencing. *See id.* at 997 (Kennedy, J. concurring); *id.* at 1012-13 (White, J. dissenting). However, the Court upheld the sentence over an Eighth Amendment challenge even though it is more severe than the sentence currently under review. *See id.* at 996.

In *Lockyer*, the Court stated that the "gross disproportionality principle reserves a constitutional violation for only the extraordinary case." 538 U.S. at 77. The Supreme Court's precedents bear this point out. In *Rummel v. Estelle*, 445 U.S. 6, 84-85 (1980), the Court upheld a sentence of life imprisonment based on three underlying felonies. In *Hutto v. Davis*, 454 U.S. 370, 373-75 (1982) (per curiam), the Court upheld a forty-year prison sentence for possession with intent to distribute nine ounces of marijuana. Only where a defendant was sentenced to life without the possibility of parole for seven non-violent underlying felonies has the Court overturned a prison sentence for being grossly disproportionate under the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277 (1983). The sentence here allows Bonilla to obtain parole after 15 years, which is less than the sentence for possession with intent to distribute. Thus, the sentence is neither "disproportionate" nor "unusual" in comparison to other drug sentences.

Therefore, Bonilla cannot overcome AEDPA deference. The Michigan Court of Appeals decision aligns with a Supreme Court decision interpreting a more severe version of the same statute,

---

[3] The sentence in *Harmelin* was mandatory life without the possibility of parole. M.C.L. § 333.7403(2)(a)(i) (West Supp. 1990-1991). The sentence in this case is mandatory life with the possibility of parole. M.C.L. § 333.7403(2)(a)(i) (2001).

and thus was not contrary to clearly established federal law. Further, Bonilla cannot show that the court of appeals unreasonably applied clearly established federal law. A court could reasonably reject Bonilla's constitutional claim based on the holding in *Harmelin*.[4]

### III. CONCLUSION

Accordingly, the district court's denial of Bonilla's petition for a writ of habeas corpus is

**AFFIRMED**.

---

[4]Bonilla fails to convincingly wrestle with *Harmelin* and the fact that it upheld a nearly identical statute that was more severe than the current statute. Even if we applied de novo review, this court considers Justice Kennedy's *Harmelin* concurrence controlling, and the court would apply the test Justice Kennedy annunciated there. *United States v. Moore*, 643 F.3d 451, 454-55 (6th Cir. 2011) (adopting and interpreting Justice Kennedy's test from *Harmelin*). Gross disproportionality analysis begins with a "threshold comparison" of the gravity of the offense and the severity of the sentence. *Id.* at 455 (citing *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring)). If the threshold comparison of the gravity of offense and severity of the sentence does not reveal gross disproportionality, it is unnecessary to engage in the second step of the analysis—a comparison of Bonilla's sentence to those of offenders in Michigan and other jurisdictions. *Id.* at 456. The threshold comparison would be seemingly unnecessary—the Supreme Court already performed the analysis in *Harmelin*. Therefore, even under de novo review, Bonilla's claims would fail.